NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a1013n.06
Filed: December 23, 2005

No. 05-5414

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| JUAN MIGUEL HERNANDEZ-CERVANTES, | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |

Before: GUY and GIBBONS, Circuit Judges; and EDMUNDS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Appellant Juan Miguel Hernandez-Cervantes pled guilty to the crime of reentry of a previously deported alien into the United States. Given the defendant's extensive criminal history, the court followed the United States Sentencing Guidelines ("Guidelines") on an advisory basis and sentenced Hernandez-Cervantes to 84 months in prison. Hernandez-Cervantes argued that his sentence should be reduced in accordance with the practice of jurisdictions that have adopted fast-track sentencing procedures. The district court declined to reduce the sentence and Hernandez-Cervantes now appeals, arguing that the court's refusal to fast-track the sentence violates 18 U.S.C. § 3553(a)(6) by creating a disparity in sentence lengths based

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

on geography. In addition, the defendant alleges that the court violated the separation of powers by refusing to fast-track a sentence except on the Attorney General's recommendation. For the following reasons, we AFFIRM the defendant's sentence.

I.

Camden, Tennessee police apprehended three men on July 4, 2004 for cashing stolen forged checks. The Camden police contacted the U.S. Citizenship and Immigration Service because one of the men, who identified himself as Pedro Manuel Ibanes-Marin, was not legally present in the United States. Ibanes-Marin was taken into federal custody; in the process, his fingerprints were submitted for identification. This testing revealed that Ibanes-Marin's true name was Juan Miguel Hernandez-Cervantes. Hernandez-Cervantes has a lengthy history of illegal entry, detention, and reentry into the United States and has also been convicted of possession/purchase of cocaine base for sale, transport/sale of a narcotic controlled substance (twice), forgery, passing stolen checks, and theft of property.

The grand jury indicted Hernandez-Cervantes on one count of reentering the United States after deportation in violation of 8 U.S.C. § 1326(a). He pled guilty to this offense in the United States District Court for the Western District of Tennessee. In advance of sentencing, a pre-sentencing report ("PSR") was prepared; the defense objected to neither its factual conclusions nor its calculation of the appropriate Guidelines range. Hernandez-Cervantes noted, however, that other jurisdictions have adopted "fast-track" policies that allow shorter sentences where illegal immigrant defendants do not file pre-trial motions or contest sentencing issues. He requested, in the interest of uniform sentencing and because he met the criteria for fast-track sentencing, that the district court sentence him to a shorter term of imprisonment than that recommended by the Guidelines.

2

Fast-tracking arose initially in border areas with large illegal immigration caseloads. Prosecutors sought to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues. *See United States v. Morales-Chaires*, ---F.3d---, 2005 WL 3307395, at \*\*2-3 (10th Cir. 2005) (noting history of fast-track sentencing); Erin T. Middleton, *Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border are Undermining the Sentencing Guidelines and Violating Equal Protection*, 2004 Utah L. Rev. 827, 831 (2004) (explaining pre-*Booker* history of fast-tracking). Congress approved and set standards for this process in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. 108-21, 117 Stat. 650, which required the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act, § 401(m)(2)(b), 117 Stat. 675 ("PROTECT Act provision"). The Sentencing Commission responded by promulgating a new Guideline authorizing a four-level reduction. U.S.S.G. § 5K3.1.

The district court declined to reduce the defendant's sentence on the fast-track rationale. In so deciding, the judge noted that the Western District of Tennessee has not adopted a fast-track program because the programs are "designed to work in those jurisdictions that have not just hundreds of illegal alien cases but thousands." In addition, the court noted that "fast-track programs are available only when adopted by and instituted by procedure through the U.S. Attorney's office and the courts." Hernandez-Cervantes presented no other arguments, so the court declined to deviate from the Guidelines. In explaining its reasoning, the court noted: "You came here to commit

3

crimes. You have six convictions in seven years . . . . [Y]our criminal history has been taken into account in calculating your criminal history score, so a sentence near the maximum is not appropriate. On the other hand, because of the nature of your crimes, drug sales, theft, forgery, it seems to me that the minimum is not appropriate either." As a result, the judge sentenced Hernandez-Cervantes to 84 months of detention.

Hernandez-Cervantes now appeals his sentence, claiming that the district court's decision to sentence him to a longer sentence than he would have received in a fast-track jurisdiction caused his sentence to be unreasonable under 18 U.S.C. § 3553(a)(6) (requiring sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct") and that the district court's deference to the executive branch in determining whether to apply the fast-track sentence is unconstitutional.

II.

The defendant argues that the district court failed to consider disparities in sentencing under § 3553(a) such that his sentence is unreasonable. This appeal is based on a sentencing decision that occurred after the Supreme Court overturned the mandatory application of the Guidelines. *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005). Where the Guidelines are not the mandatory basis for sentencing, the sentence is reviewed for unreasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The courts may find a sentence unreasonable "when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a) and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* Courts, however, are not required to "engage in a ritualistic incantation of the § 3553(a) factors." *United*

4

*States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005) (quoting *United States v. Washington*, 147 F.3d 490, 491-92 (6th Cir. 1998)).

Hernandez-Cervantes claims that his sentence is unreasonable because the district court's rejection of his request for a fast-track-like sentence reduction creates disparities in sentencing based on jurisdiction in violation of 18 U.S.C. § 3553(a)(6). Disparities in sentencing are only one consideration in sentencing under § 3553(a), however. Here, the court began with the statement that the Guidelines would be a "starting point" for the sentencing determination, and the defendant failed to make any arguments (other than fast-tracking) as to why application of the § 3553(a) factors demanded deviation from those Guidelines in this case. In fact, the court explained its sentencing decision by reference to other factors. The court noted the nature of the defendant's crimes, thereby considering, at a minimum, the "seriousness of the offense" under § 3553(a)(2)(A). The court also discussed the defendant's recidivist criminal history, noting that the defendant "came here to commit crimes." This statement strongly implies that the court considered the need "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2).

The district court then turned to the defendant's fast-tracking argument. The court noted that Hernandez-Cervantes might indeed have received a different sentence in a fast-track jurisdiction that applied the Guidelines. The court explained that the fast-track deviation was provided to districts where the alien reentry case docket was overloaded – a situation that does not exist in the Western District of Tennessee. In addition, the district court indicated that its discretion was limited without executive branch approval. Hernandez-Cervantes challenges this claimed lack of authority to deviate from the Guidelines, arguing that the district court might have deviated from the Guidelines

5

had it felt empowered to do so.[1]

It is clear that fast-tracking does create sentence disparities based on geography. If those disparities are unwarranted, then § 3553(a)(6) empowers courts to consider the effects of fast-tracking when imposing sentences. The court could thus arguably commit error by declining to consider deviation on this basis. On the other hand, Congress authorized, in the PROTECT Act, the precise disparities at issue in this case, so a court would have to override that legislative judgment in order to reduce a defendant's sentence on the fast-track basis. *See United States v. Martinez-Flores*, 428 F.3d 22, 30 n.3 (1st Cir. 2005) (noting in dicta that "it is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable."); *Morales-Chaires*, 2005 WL 3307395, at *5 (collecting cases both departing and declining to depart from the Guidelines).

The PROTECT Act legislative judgment is dispositive of the fast-tracking sentence disparity issue. The legislature instructed the courts, in § 3553(a)(6), to avoid "unwarranted sentence disparities" but explicitly authorized disparities based on fast-tracking in the PROTECT Act. There is no conflict between these statutes: Congress determined, based on sound principles of judicial economy, that geographic sentencing disparities due to fast-tracking are not "unwarranted." These disparities therefore do not violate § 3553(a)(6) and the district court did not err by refusing Hernandez-Cervantes' fast-tracking argument.

---

[1] Courts generally agreed that the fast-track provision was an acceptable basis for sentence disparity under the mandatory Guidelines scheme that existed pre-*Booker*. *See Morales-Chaires*, 2005 WL 3307395, at *3 (noting agreement in the Second, Ninth (en banc), and Tenth circuits). The Sixth Circuit has not addressed this issue, and because the Guidelines were advisory in this case we do not need to decide it here.

6

Even if the district court's decision not to consider fast-tracking in imposing sentence in this case had violated § 3553(a)(6), such error would have been harmless. "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless–*i.e.* any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). The purported error in this case was harmless for several reasons. First, the court provided an independent policy basis for its decision not to fast-track the defendant. In addition, it adequately considered other sentencing factors – notably, criminal history and recidivism – in determining the length of the sentence to be applied. *See Morales-Chaires*, 2005 WL 3307395, at *6 (declining to address fast-track argument where the district court based its sentence on other sentencing factors). Though a more explicit consideration of the § 3553(a) factors would have aided us in deciding this case, the implied consideration undertaken here is sufficient to support the reasonableness of the ultimate sentencing decision based on this court's decisions in *Webb* and *Chandler*. The court was therefore clear enough to indicate that it would impose an identical sentence were the case remanded, and Hernandez-Cervantes' appeal must fail.

III.

Hernandez-Cervantes also argues that the district court's refusal to fast-track without executive branch approval, if upheld by this court, creates an unconstitutional restraint on the separation of powers. This deference to prosecutorial decision-making, he claims, violates the principle of separation of powers that undergird the American constitutional system. Because we have upheld the sentence imposed, we must consider the defendant's constitutional argument.

Hernandez-Cervantes relies on *Mistretta v. United States*, in which the Supreme Court

7

upheld the Guidelines against a separation of powers challenge but noted in a footnote that "[H]ad Congress decided to confer responsibility for promulgating Guidelines on the Executive Branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial responsibilities to the executive or unconstitutionally had united the power to sentence within one Branch." 488 U.S. 361, 391 n.17 (1989). In this case, the defendant challenges the constitutionality of § 401(m)(2)(B) of the PROTECT Act, which directed the Sentencing Commission to promulgate what is now U.S.S.G. § 5K3.1, allowing downward departure for fast-tracking upon motion by the government. Hernandez-Cervantes claims that this statute, and the Guideline it created, impermissibly limits the power of the judiciary to determine the length of sentences.

Hernandez-Cervantes failed to raise this argument before the district court, so it must be reviewed for plain error on appeal. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). To show plain error, the appellant must show that (1) there was error; (2) that was plain; and (3) that affected the substantial rights of the defendant. *Id.* If so, the court may reverse the district court decision if that decision "seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *Id.*

The district court did not commit plain error by deferring to the executive branch in this case. First, it is doubtful that the court's deference here constituted error. In *Mistretta*, the Supreme Court held that the Guidelines are not an unconstitutional limitation on the separation of powers. 488 U.S. at 390 ("[T]he sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch."). Contrary to the defendant's argument here, the PROTECT Act amendments did not change the balance of those powers. Prosecutors have always been able to affect the length of

8

sentences through plea agreements, motions for downward departures, and other means. Before the PROTECT Act was passed, prosecutors adopted fast track procedures through existing means, *see Morales-Chaires*, 2005 WL 3307395, at *2; the PROTECT Act merely made explicit and regulated such arrangements. Deference by courts to the fast-tracking decisions of the executive may therefore be aptly viewed as a form of prosecutorial discretion within the preexisting, constitutional Guidelines structure. As a result, the defendant's argument likely remains constrained by *Mistretta*.

We decline to decide this question, however, because even assuming *arguendo* that the district court's deference to the executive branch under the PROTECT Act did constitute error, that error did not affect the defendant's substantial rights. The defendant's constitutional argument requests the same relief as his statutory claim, but we have already concluded, in Part II, that the court has provided sufficient indication that Hernandez-Cervantes would receive an identical sentence were the case remanded. As a result, we held that any error from fast-tracking was harmless. "An error may be harmless only where the government is able to prove that none of the defendant's substantial rights has been affected by the error." *Barnett*, 398 F.3d at 530. Plain error requires infringement of the defendant's substantial rights, so harmless error cannot be plain. Because the defendant's substantial rights were unaffected here, the court did not commit plain error.

IV.

For the foregoing reasons, the district court decision is AFFIRMED. The district court considered the § 3553(a) sentencing factors, and its determination of a sentence was reasonable notwithstanding the geographical sentence discrepancies created by fast-track jurisdictions. The

court did not commit plain error by deferring to the executive branch while applying the Guidelines

as an advisory guide to sentencing.