**NOT FOR PUBLICATION**
File Name: 07a0128n.06
Filed: February 15, 2007

**NO. 06-3112**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,                         ON APPEAL FROM THE
                                               UNITED STATES DISTRICT

v.                                          COURT FOR THE SOUTHERN
                                               DISTRICT OF OHIO

NOE JESUS CASTRO-MARTINEZ,

      Defendant-Appellant.

_____/

**BEFORE: SUHRHEINRICH, GIBBONS, and COOK, Circuit Judges.**

**SUHRHEINRICH, J.**, Defendant-Appellant Noe Jesus Castro-Martinez ("Defendant") pleaded guilty to reentry of an illegal alien, in violation of 8 U.S.C. § 1326. He appeals his sentence from the United States District Court for the Southern District of Ohio, Western Division ("district court"), contending it is unreasonable because: (1) the actual severity of his previous convictions supported a sentence below the advisory Guidelines range; (2) the district court refused to sentence him below the Guidelines range based on sentences of other illegal aliens in so-called "fast-track" jurisdictions; and (3) the district court refused to sentence him below the Guidelines range based on sentences of other illegal aliens within the Southern District of Ohio. For the reasons that follow, we **AFFIRM**.

**I. Facts**

On March 29, 2005, Miami Township police officers responded to a domestic altercation involving a Hispanic male and his girlfriend. After being identified as the male involved in the

domestic altercation, Defendant admitted he did not possess any form of identification. When questioned by the officers, Defendant gave the police a false name and admitted he was an illegal alien. After he was fingerprinted by the police, his identity was revealed to be Noe Jesus Castro-Martinez. Defendant was arrested and charged with falsification and unlawful restraint, in violation of Ohio Rev. Code Ann. § 2905.03 (West 2004). The Miami Township police officers contacted the Bureau of Immigration and Customs Enforcement ("ICE"). When ICE officials interviewed Defendant, he confirmed he was a citizen of Mexico and had previously been deported from the United States in 1999 and 2001. A review of his criminal record revealed that while in the United States, Defendant had been arrested four times for assault: in July 1991, June 1994, October 1995, and September 1996. He was convicted for the 1991 and 1996 arrests.

On April 13, 2005, Defendant was taken into federal custody. On May 18, 2005, Defendant was indicted by a federal grand jury on charges of reentry of removed alien, pursuant to 8 U.S.C. § 1326. On July 25, 2005, Defendant entered a guilty plea to the Indictment. At Defendant's November 23, 2005, sentencing hearing, the district court calculated Defendant's Guidelines range pursuant to U.S. Sentencing Guidelines Manual § 2L1.2 (2004): Unlawfully Entering or Remaining in the United States. The court assigned Defendant a net offense level of twenty-one, a criminal history score of six, and a criminal history category of III. This resulted in an advisory Guidelines range of 46 to 57 months. The district court departed downward six months below the Guidelines range to 40 months. This was in recognition that Defendant's illegal status rendered him ineligible for good time credit or halfway house designation at the end of his sentence.

On appeal, Defendant contends his sentence is unreasonable because the actual severity of his previous conviction supports a sentence below the advisory Guidelines range. Additionally, Defendant argues the district court unreasonably refused to sentence him below the Guidelines range based on the differences between his sentence and sentences of other illegal aliens in fast-track jurisdictions and the differences between his sentence and sentences of other illegal aliens within the Southern District of Ohio.

## II. Standard of Review

"[W]hen a defendant challenges a district court's sentencing determination, we are instructed to determine 'whether [the] sentence is unreasonable.'" *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (quoting *United States v. Booker*, 543 U.S. 220, 261 (2005)). "[A] sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Webb*, 403 F.3d at 383 (citing *Booker*, 543 U.S. at 245-46). "[S]entences properly calculated under the Guidelines [are credited] with a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). We review the district court's legal interpretation of the Guidelines *de novo*. *United States v. Arnold*, 58 F.3d 1117, 1120 (6th Cir. 1995).

## III. Analysis

### A. Severity of Prior Conviction

Defendant contends his sentence is unreasonable because the actual severity of his state conviction of aggravated assault supported a sentence considerably below the advisory Guidelines range. In July 1991, Defendant was arrested for aggravated assault, to which he

pleaded guilty and was given three years of probation. Defendant's probation was revoked, resulting in a sentence of 180 days in prison.[1] Defendant contends because he was sentenced to probation, and only received a 180-day jail sentence after having his probation revoked, the conviction did not reflect the degree of dangerousness sufficient to justify a sixteen-level enhancement to his base offense level.[2]

Addressing the severity of prior convictions, the district court stated:

> If I were required to analyze the 16-level enhancement based upon the facts and circumstances of this defendant, I, quite frankly would not be able to say that it is excessive. . . .
>
> . . .
>
> I fully understand the argument that these [convictions] couldn't have been as bad as the name of the offense would indicate because, after all, he was placed on probation both times, but the fact remains probation was revoked because the defendant has [an alcohol] problem which he has been unable to control over the years, and that problem . . . causes recidivism and perhaps reentry once deported.

Under U.S. Sentencing Guidelines Manual §2L1.2(b)(1), if a "defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence, . . . [then] increase by 16 levels . . . ." U.S. Sentencing Guidelines Manual §2L1.2(b)(1) (2004). The Sentencing Guidelines include aggravated assault in the definition of "crime of violence." *Id*. §2L1.2 cmt. n.1(B)(iii). Defendant did not dispute at sentencing, nor does he dispute in this appeal, that he was convicted of aggravated assault in 1992, or that this conviction constitutes a crime of violence under the applicable Guidelines.

---

[1]The Presentence Investigation Report indicates that Defendant's probation was revoked as a result of committing a new criminal offense, failing to report to the probation office, failing to pay court costs and probation fees, and failing to attend Alcoholics Anonymous.

[2]In addition, the district court carefully considered Defendant's prior criminal record, which included another conviction in 1996 for assault causing bodily injury. Defendant was sentenced to one year of probation for the 1996 conviction. This probation was also revoked, and Defendant was sentenced to 180 days in jail.

"[T]he Sentencing Guidelines do not afford the district court any discretion to depart downward under USSG § 2L1.2(b)(1)(A)(ii)." *United States v. Ibarra-Hernandez*, 427 F.3d 322, 336 (6th Cir. 2005). Defendant has not rebutted the presumption that his sentence is reasonable; therefore, we affirm the decision of the district court.

### B. Disparity With Fast-Track Districts

Next, Defendant argues the district court unreasonably refused to sentence him below the Guidelines range based on the differences between his sentence and sentences of similarly situated defendants in fast-track jurisdictions.

Fast-track programs were first created to ease the burden in some districts dealing with illegal re-entry cases. Primarily these districts were located on the Mexican border, and typically a large number of illegal re-entry cases. The high volume of illegal re-entry cases strained facilities as there was not enough space to house defendants and a shortage of prosecutors. To alleviate the problem, prosecutors in fast-track districts have agreed to significantly reduced sentences in exchange for prompt guilty pleas. This procedure requires the defendant to enter into a plea bargain with the government and forfeit the right to appeal or collaterally attack the conviction. The purpose of fast-track programs is to facilitate quick and easy disposition of cases to reduce the burdens they impose in those districts. The Southern District of Ohio has not implemented a fast-track program.

This Court has held that the existence of fast-track programs does not render disparate sentences outside of fast-track jurisdictions unreasonable. *See United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006) (holding sentencing disparity between fast-track district and non fast-track district "does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities"); *United States v. Contreras-Armendariz*, No. 05-5483, 2006

WL 3488784, at *3 (6th Cir. Dec. 4, 2006) (unpublished opinion) (holding the district court's refusal to sentence defendant as if fast-track sentencing was available in Kentucky did not render the sentence unreasonable); *see also United States v. Hernandez-Cervantes*, 161 F. App'x 508 (6th Cir. 2005) (unpublished opinion) (holding defendant's sentence was not rendered unreasonable by disparities between defendant's sentence and sentences received by defendants in fast-track jurisdictions); *United States v. Louis*, 185 F. App'x 500 (6th Cir. 2006) (unpublished opinion) (holding defendant's sentence was not rendered unreasonable by district court's failure to consider the disparity created by the lack of a fast-track sentencing scheme in the district). Defendant has not rebutted the presumption that his sentence is reasonable.

### C. Disparity Within District

Lastly, Defendant contends his sentence is unreasonable because the district court refused to sentence him below the Guidelines range based on differences between his sentence and sentences of other illegal aliens within the Southern District of Ohio.

In support of his request for a sentence below the advisory sentence calculated using the Guidelines, Defendant submitted certain statistical data. The district court carefully considered the statistics, but ultimately decided that "[t]he use of statistics to show a disparity within the discretion of this Court . . . does not satisfy this Court that either a departure from the advisory sentencing guideline range or a sentence below that range . . . should be ordered for this reason." The district court's consideration of the statistics was not unreasonable. Defendant's sentencing data for "Immigration Offenses," which includes the mean and median sentence, is composed of sentences for *all* immigration offenses, not solely 8 U.S.C. § 1326 offenses. The "Immigration Category" in Defendant's statistical data is composed of a hodgepodge of sentences from all immigration statutes.

"Under 18 U.S.C. § 3553(a), the need to avoid sentencing disparity is only one of the factors that a district court should consider in determining an appropriate sentence." *Hernandez-Fierros*, 453 F.3d at 313 (holding no error when the district court balanced the need to avoid sentencing disparities with the need to protect the public and impress upon defendant the importance of obeying laws); *see also Hernandez-Cervantes*, 161 F. App'x at 508 (unpublished opinion) (holding no error when district court did not reduce defendant's reentry of alien sentence because of sentencing disparity when court also considered the seriousness of the offense, deterrence to criminal conduct, and need to protect the public).

The district court carefully considered all of Defendant's arguments for a departure and weighed them in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). The district court discussed the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, adequately afford deterrence to this particular defendant's criminal conduct, take into consideration the public's need for safety, and provide just punishment. This included Defendant's history of violent offenses, problems with recidivism, and how those factors distinguished him from other similarly situated defendants who had received downward departures.[3] The district court also considered the goal of providing Defendant with needed treatment or care in the most effective manner available to an illegal alien. Further, the district court considered sentencing disparity, stating, "as far as disparity, as far as treating this defendant unreasonably from other defendants who have committed similar crimes with similar

---

[3]In addition to the aggravated assault conviction giving rise to the 16-level enhancement, Defendant has been convicted of driving with a suspended license, failure to identify (for providing police with a fictitious name), assault, and twice for driving under the influence. Defendant initially received probation for most of these convictions, but probation sentences were later revoked, in part, due to Defendant's failure to attend alcohol treatment and his positive urine test for cocaine.

backgrounds, the Court believes it has covered that as thoroughly as it can. The Court sees no unreasonable disparity."

Defendant has not rebutted the presumption that the 40-month sentence was reasonable.

## IV. Conclusion

Accordingly, we **AFFIRM** the sentence of the district court.