**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0548n.06

**No. 12-5995**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jun 04, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LUCIO SANCHEZ-ROSAS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| *Defendant-Appellant*. | ) | |
| | ) | **O P I N I O N** |

BEFORE:     COLE and COOK, Circuit Judges; KATZ, District Judge.[*]

KATZ, District Judge. Lucio Sanchez-Rosas pleaded guilty to one count of illegal reentry. At sentencing, he argued that he should receive a lower sentence because early disposition programs in other federal districts create sentencing disparities by offering reductions to Sentencing Guidelines calculations in exchange for quick case disposition. The district court determined Mr. Sanchez-Rosas would not have qualified for such a program in another district and denied his request. Mr. Sanchez-Rosas appeals his sentence as procedurally and substantively unreasonable. Because we agree that these programs may create sentencing disparities and that he may have qualified for one, we vacate Mr. Sanchez-Rosas' sentence and remand for resentencing.

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

A decade prior to this case, Mr. Sanchez-Rosas was convicted of conspiracy to possess with intent to distribute and distribution of five kilograms or more of cocaine. 21 U.S.C. § 841(b)(1)(A). His deportation followed. The instant case stems from Mr. Sanchez-Rosas' 2011 arrest in Knoxville, Tennessee, following which the government charged him with illegal reentry to the United States after having been previously deported for the former drug charge. 8 U.S.C. § 1326(b)(2). Mr. Sanchez-Rosas pleaded guilty to this charge without a plea agreement. At sentencing he moved for a below-guidelines sentence, citing 18 U.S.C. § 3553(a)(6), which instructs judges to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* He argued that the existence of "fast-track" programs in sixteen other federal districts meant defendants in those districts with circumstances similar to his often received reductions of two to four offense levels and the corresponding reductions in custodial time. The sentencing judge determined, however, that Mr. Sanchez-Rosas would not have qualified for the other districts' fast track programs for two reasons. First, the court adopted the government's contention that Mr. Sanchez-Rosas' prior drug conviction disqualified him from such programs. Second, the court agreed with the government's contention that Mr. Sanchez-Rosas eliminated his own eligibility by not promptly entering into a plea agreement to plead guilty and waive his rights to trial, to file pre-trial motions, to move or argue for a variance from the Sentencing Guidelines, and to appeal or file a post-conviction motion.

We have previously commented on the origin and application of fast-track programs. *United States v. Hernandez-Cervantes*, 161 F. App'x 508, 510 (6th Cir. 2005). In short, certain United

States Attorney's offices with heavy illegal immigration dockets implemented programs in which illegal immigrants quickly pleaded guilty and waived certain rights, including the rights to appeal, to make pre-trial motions, and to request sentencing variances. In exchange, the government agreed to move for downward departures of up to four levels in calculating the sentencing guidelines. *See* U.S.S.G. § 5K3.1. At the time of Mr. Sanchez-Rosas' arrest, sixteen districts with heavy illegal immigration dockets had fast-track programs in place, but the Eastern District of Tennessee did not.[1] *See generally* Fast-Track Dispositions District-By-District Relating to Illegal Reentry Cases, 21 Fed. Sent. R. 339 (2009) (summary of the fast-track programs existing in thirteen districts in 2005).

Even though the Eastern District of Tennessee did not have a fast-track program in place at the time of Mr. Sanchez-Rosas' arrest, we have said that a sentencing judge may consider whether the existence of fast-track programs in some districts but not others creates sentencing disparities and that the judge may therefore vary from the Guidelines based on a policy disagreement with those disparities. *United States v. Camacho-Arellano*, 614 F.3d 244, 250 (6th Cir. 2010) (considering nearly identical circumstances and remanding to the district court to consider the defendant's argument that not applying the fast-track base-level reduction would create a sentencing disparity); *see also Kimbrough v. United States*, 552 U.S. 85, 110 (2007) (endorsing variances based on policy disagreements).

---

[1] The government informs us that the Deputy Attorney General has since instructed all districts to implement a fast-track program based on uniform criteria and that the Eastern District of Tennessee has recently done so. (Appellee Br. at 15-17; Deputy Att'y General Mem., R. 18-7.)

At sentencing, the district court acknowledged that it had the authority under *Camacho-Arellano* to vary from the Guidelines to correct for sentencing disparities, but declined to do so because it found Mr. Sanchez-Rosas would not have qualified for a fast-track program:

> The defendant also asserts that the fast track disposition program, as utilized in other districts, would result in a four-level downward departure under Sentencing Guideline 5K3.1. The government has responded that the defendant is not eligible for fast track consideration for two reasons. First of all, the seriousness of this prior federal drug conviction for which he was deported, and, secondly, the defendant declined to enter into a plea agreement. The Court recognizes that it has discretion to consider a downward departure for defendant based on the sentencing disparity with fast track programs. For the reasons outlined by the government, the Court finds the defendant does not qualify for fast track consideration and his motion or downward variance is denied.

(Sentencing Tr., R. 24 at 34-35.)

Mr. Sanchez-Rosas says his sentence was procedurally and substantively unreasonable.

II.

Mr. Sanchez-Rosas contends his sentence is procedurally unreasonable because the sentencing judge improperly found he was ineligible for fast track programs in other districts and, on concluding that he would not be eligible, declined to vary from the Guidelines range. "We review the district court's sentence under an abuse-of-discretion standard." *United States v. Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)). "To determine whether a sentence is procedurally reasonable, we consider whether the district court (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including

any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *Id.* at 983 (quotation omitted). Thus, a sentence can be procedurally unreasonable if the district court failed to consider a relevant § 3553(a) factor. *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 383-85 (6th Cir. 2005)).

Sentencing judges have the latitude to vary from the Guidelines based on a disagreement with the Guidelines' policy, "even in a mine-run case." *Kimbrough*, 552 U.S. at 110; *accord Spears v. United States*, 555 U.S. 261, 264 (2009) ("That was indeed the point of *Kimbrough*: a recognition of district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."); *Camacho-Arellano*, 614 F.3d at 248 (applying the same theory to sentencing disparities caused by the fast-track program).

In this case, the district court declined to vary from the Guidelines not because of a policy decision but because it determined Mr. Sanchez-Rosas would not have qualified for a fast-track program in another district. This followed two findings that Mr. Sanchez-Rosas contends were wrong. Mr. Sanchez-Rosas asks us to consider whether an improper finding of fact that led to a denial of a § 3553(a)(6) variance is procedurally unreasonable. He also asks us to determine whether defendants must waive rights identically to someone in the fast-track program in order for the sentencing court to consider him similar, for purposes of § 3553(a)(6), to a defendant who did.

A.

In its response opposing Mr. Sanchez-Rosas' pre-sentencing motion to vary below the Guidelines recommendation, the government claimed he would not have been eligible for that district's recently implemented program. "Simply put, the defendant is NOT eligible for fast track consideration in the Eastern District of Tennessee for two reasons. First and most importantly, because of the seriousness of his prior federal drug trafficking conviction for which he was deported the first time." (R. 19 at 4.) This may have confused the discussion; Mr. Sanchez-Rosas was arguing for a variance because he may have qualified in *other* districts at the time of his arrest, not because he would have qualified in this district's later-adopted program. (R. 18 at 7-9.) Adding to the confusion, during the sentencing hearing the government said: "In most districts the criminal history alone would have, and certainly does in our district, disqualify. The defendant has failed to show that there is any disparity. A defendant *in any other district* would likewise have been disqualified." (Sentencing Tr., R. 24 at 26. (emphasis added))

The government's brief to this Court indicates it is conceding this point; it now acknowledges "not all districts disqualify defendants with prior drug trafficking convictions." (Appellee's Br. at 27.) In fact, it points to no district that has adopted an all-out ban based on prior drug convictions. Furthermore, the government based its original argument on the program in the Eastern District of Tennessee, which was adopted pursuant to the "Cole memo" which gives United States Attorneys "the discretion to limit or deny a defendant's participation" based on his prior drug trafficking conviction, but does not automatically disqualify such defendants. (R. 19-1 at 3.) The government

makes no further explicit claims that Mr. Sanchez-Rosas would not have qualified for a fast-track program due to his prior drug conviction or his criminal history points.

The district court relied on the government's position that the prior drug conviction (or the resulting criminal history points) disqualified Mr. Sanchez-Rosas from all fast-track programs. Reliance on the government is no surprise; fast-track programs are the government's tool and the government had possession of accurate information about program criteria. Nevertheless, this position turned out to be wrong. "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (quotation omitted); *see also Gall*, 552 U.S. at 51 (including "selecting a sentence based on clearly erroneous facts" as an abuse of discretion in the sentencing process). This reliance on a clearly erroneous fact presented by the government was an abuse of discretion.

Requiring accuracy in the factual basis of a § 3553(a) determination aligns closely with – and logically follows – holdings in other cases requiring consideration of the § 3553(a) factors. *E.g., Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *Camacho-Arellano*, 614 F.3d at 252 (Kennedy, J., dissenting) ("One aspect of Sixth Circuit precedent noted by the district judge remains intact after this decision: a district court's refusal to grant a variance due to fast-track disparity is not an erroneous determination, as long as it rejects such an argument on the merits."); *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008) (requiring the sentencing court to explain its application

of the § 3553(a) factors sufficiently "to allow for meaningful appellate review." (quotation marks and citation omitted)); *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) ("Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."); *United States v. Garner*, 940 F.2d 172, 174 (6th Cir. 1991) ("We review a district court's factual findings which underlie the application of a guideline provision for clear error. However, whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this court." (citation omitted)). Thus, just as failure to elucidate the reasoning behind certain sentencing decisions can lead to a procedurally unreasonable sentence, so does reliance on an erroneous fact that alters that reasoning.

Because a sentencing court must consider the § 3553(a) factors in selecting a sentence, *Gall*, 552 U.S. at 51, a sentence based on erroneous findings of material facts that support a § 3553(a) determination is procedurally unreasonable. Therefore, we remand this case to the district court for Mr. Sanchez-Rosas to be resentenced without this error.

B.

The district court also found that Mr. Sanchez-Rosas would not qualify for a fast-track program because he did not enter into a plea agreement within 30 days and waive certain rights. All fast-track programs require, by design, entry into a plea agreement and waiver of rights. Nevertheless, two circuits have taken the position that a defendant need not waive his rights in a district in which no fast-track program exists in order to benefit from a sentencing disparity analysis.

*United States v. Arrelucea-Zamudio*, 581 F.3d 142, 156 n.13 (3d Cir. 2009) ("We do not contemplate that a defendant must seek out and match himself with a specific defendant in a fast-track jurisdiction that has exactly similar circumstances. . . . Moreover, a non-fast-track defendant would not have exactly parallel circumstances because he would not have had the opportunity to waive his appellate or other rights in exchange for the departure recommendation, as is part of a plea agreement in fast-track districts (and not available to a defendant in a non-fast-track district)."); *United States v. Rodriguez*, 527 F.3d 221, 231 (1st Cir. 2008) ("Lacking the benefit of the bargain inherent in fast-track programs, a defendant cannot be expected to renounce his right to mount a defense."). Furthermore, although the issue was not presented or analyzed, when this Court decided that sentencing courts could consider disparities created by fast-track programs, it did so in a case in which the defendant had not waived his right to ask for that variance or to appeal. *Camacho-Arellano*, 614 F.3d at 245-46; *see generally United States v. Camacho-Arellano*, No. 2:06-cr-20333 (W.D. Tenn. Mar 20, 2007).

The government claims that the lack of a rights waiver would disqualify Mr. Sanchez-Rosas in every district, so the district court did not err in finding him disqualified. (Appellee Br. at 26-30.) The Seventh Circuit has adopted something akin to this position, requiring a prompt plea, agreement to the factual basis, and waiver of rights before a disparity analysis is appropriate. *United States v. Ramirez*, 675 F.3d 634, 641 (7th Cir. 2011). Mr. Sanchez-Rosas exemplifies why this is a harsh requirement: in his case, even if the sentencing judge had noticed a potential for disparity, the government argued against it, incorrectly telling the court Mr. Sanchez-Rosas' prior drug conviction disqualified him in all districts. The district court credited the government's position on

disqualification. Had Mr. Sanchez-Rosas voluntarily waived his rights to further argue for the variance and to appeal, then he would have been left with a disparate sentence and no remedy.

We decline to adopt this harsh requirement. The statutory text and our previous treatment of § 3553(a)(6) indicate its purpose is to reduce sentencing disparities between defendants with similar criminal conduct and criminal histories. *United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007); *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991). Mr. Sanchez-Rosas did move his case along, even if he did not perfectly mimic a fast-track defendant. As such, this case presents us with no compelling reason to extend the similarity requirement to how the defendant handles his case in the court system. We need not presently opine on instances in which a defendant has acted in a manner inconsistent with accepting responsibility and disposing of his case quickly. Within this backdrop, when no fast-track program exists in a certain district, requiring that a defendant waive his right to request a Guidelines variance and simply hope that the sentencing judge notices that he may have gotten a lower sentence in other districts is more than § 3553(a)(6) requires.

A sentencing court may consider whether factors not reflected in the Guidelines calculation create a disparity and adjust accordingly. In applying § 3553(a)(6) to avoid sentencing disparities between similar defendants with similar records, the sentencing court need not require a defendant to waive every right exactly as a defendant in a fast-track district who enters into a fast-track plea agreement. Mr. Sanchez-Rosas moved his case along by pleading guilty relatively quickly, and the district court should thus consider him similar to defendants in fast-track districts who received fast-track agreements and sentence reductions.

C.

We need not evaluate whether Mr. Sanchez-Rosas' sentence was substantively reasonable since we are remanding the case for procedural unreasonableness.

III.

Because Mr. Sanchez-Rosas has shown procedural unreasonableness in the process of determining whether his sentence created unwarranted disparities between himself and defendants convicted of the same crime, we VACATE Mr. Sanchez-Rosas' sentence and REMAND the matter to the district court for resentencing consistent with this opinion.