**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0614n.06

No. 09-5238

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff–Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| BERNARDO BALLI-SOLIS, | ) | |
| | ) | |
| **Defendant–Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before: NORRIS, MOORE, and McKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant Bernardo Balli-Solis appeals the district court's imposition of a seventy-month term of imprisonment for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2), and a consecutive twelve-month term of imprisonment for violations of his previously imposed supervised release. Balli-Solis specifically contends that his sentence was unreasonable because (1) the district court erroneously believed that it was beyond its authority to take into account the fast-track disparity when fashioning an appropriate sentence, and (2) the predicate felony upon which a U.S. Sentencing Guidelines ("U.S.S.G.") enhancement was based was too stale to justify the district court's sentence under 18 U.S.C. § 3553(a). Because we conclude that the district court committed procedural error in failing to recognize that it could consider Balli-Solis's fast-track disparity argument and vary categorically from the Guidelines, we **VACATE** the judgment of the district court and **REMAND** for resentencing.

## I. BACKGROUND & PROCEDURE

On January 9, 2008, officers of the Metropolitan Nashville Police Department stopped a vehicle that Balli-Solis, a native and citizen of Mexico, was driving for a traffic infraction. As a result of the traffic stop, police determined that Balli-Solis was operating the vehicle without a license and had an open container of alcohol. They subsequently placed him under arrest. During booking, local Nashville law-enforcement officers, working in partnership with U.S. Immigration and Customs Enforcement ("ICE") under the section 287(g) program,[1] suspected that Balli-Solis was not authorized to be in the United States, which was confirmed by a subsequent ICE investigation. Balli-Solis was charged with the instant offense: one count of being found in the United States without authorization after having been "previously deported and removed from the United States subsequent to a conviction for the commission of an aggravated felony" in violation of 8 U.S.C. § 1326(a) and (b)(2). Dist. Ct. Dkt. Doc. ("Doc.") 1 (Indictment).

The aggravated-felony conviction upon which the instant § 1326 offense relied was a 1991 conviction in the U.S. District Court for the Southern District of Texas for conspiracy to possess with intent to distribute over one-hundred kilograms of marijuana. According to Balli-Solis's description of the 1991 offense, while he was "on the American side of the border" someone approached him and "asked [him] if [he] would take a van to a store" in exchange for $300. Doc. 27 (Sent. Hr'g Tr.

---

[1]"The 287(g) Program permits ICE to deputize local law enforcement officers to perform immigration enforcement activities pursuant to a written agreement." *United States v. Sosa-Carabantes*, 561 F.3d 256, 257 (4th Cir. 2009) (citing 8 U.S.C. § 1357(g)(1)). "ICE trains the local law enforcement officers who participate in the 287(g) Program." *Id.* (citing 8 U.S.C. § 1357(g)(2)).

at 11–12). Balli-Solis had driven "about four blocks" when the police arrested him and uncovered marijuana hidden in the van.[2] *Id.* at 12. Balli-Solis pleaded guilty to the drug charge and was sentenced to sixty-three months' imprisonment and four years' supervised release. He was released to Mexican authorities on September 2, 1994, under the Prisoner Transfer Treaty program, and he served the remainder of his prison sentence in Mexico.

Balli-Solis knowingly and voluntarily pleaded guilty to the instant § 1326 offense on April 7, 2008. At sentencing, the district court calculated Balli-Solis's base offense level as eight under U.S.S.G. § 2L1.2; added a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) for reentry after having been removed previously following his 1991 conviction for drug conspiracy; and then subtracted three points for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). The resulting total offense level was twenty-one. Turning to Balli-Solis's criminal-history score, the district court determined that Balli-Solis had accumulated ten criminal-history points as a result of his 1991 drug conspiracy conviction and three previous illegal-reentry convictions in 1998, 2000, and 2002.[3] Because the period of supervised release for his 2002 illegal-reentry conviction had yet

---

[2]As Balli-Solis highlights in his Reply Brief, the Government's assertion that Balli-Solis was charged with drug trafficking over the Mexico–United States border is not supported by the record. It appears as though the district court also operated under this misapprehension as it stated in support of Balli-Solis's sentence on the instant § 1326 offense "that drug trafficking *into* this country is a major problem." Doc. 27 (Sent. Hr'g Tr. at 28) (emphasis added).

[3]After serving his prison term in Mexico, Balli-Solis returned to the United States without authorization and was subsequently removed at least three additional times. On September 9, 1998, he was charged with illegal reentry under § 1326(a), pleaded guilty, and was sentenced to sixty-six days' incarceration. He was removed on December 15, 1998. On March 14, 2000, Balli-Solis was charged with illegal reentry under § 1326(a), pleaded guilty, and was sentenced to twelve-months'

to expire, the district court added two additional criminal-history points. The district court also added one additional point based on the fact that Balli-Solis committed the instant offense less than two years after his release from incarceration for the 2002 offense. With a total of thirteen criminal-history points, Balli-Solis's Criminal History Category was VI, the highest possible under the Guidelines. The resulting recommended Guidelines range was seventy-seven to ninety-six months' imprisonment.

After calculating the recommended Guidelines range for the § 1326 offense, the district court addressed the recommended sentence for Balli-Solis's supervised-release violations associated with the 2002 illegal-reentry conviction.[4] According to the U.S. Probation Office, Balli-Solis had violated his supervised release by committing a federal, state, or local crime, which included the instant § 1326 offense. This Grade B violation, when coupled with a Criminal History Category IV (which was Balli-Solis's Criminal History Category at the time he committed the underlying 2002 offense), resulted in a recommended Guidelines range of twelve to eighteen months' imprisonment.

Faced with these potential penalties, Balli-Solis argued at sentencing that he merited "a downward departure [of] four levels." Doc. 27 (Sent. Hr'g Tr. at 14). He sought a two-level

---

imprisonment with one year of supervised release. He was removed on March 15, 2001. On July 7, 2002, Balli-Solis was arrested in the United States for the third time. On this occasion, he was charged with illegal reentry by a previously deported aggravated felon in violation of 8 U.S.C. § 1326(a) and (b), to which he pleaded guilty, and was sentenced to fifty-seven months' imprisonment followed by three years' supervised release. After serving his prison term, Balli-Solis was removed from the United States on August 30, 2006.

[4]The case involving Balli-Solis's violation of his supervised release was transferred from the U.S. District Court for the Southern District of Texas.

reduction based on the fact that the Guidelines' calculation—particularly the sixteen-level enhancement—overrepresented Balli-Solis's criminal history and the additional two levels based on the disparity that the absence of the fast-track program creates in illegal reentry cases in the U.S. District Court for the Middle District of Tennessee.[5] Balli-Solis did not make any argument aimed at his sentence for the violation of his supervised release.

Immediately following Balli-Solis's argument that "sentenc[ing] him to imprisonment for a period of 77 to 96 months" when defendants in fast-track jurisdictions "are being sentenced to 32 months" would create an "unwarranted disparity," *id*. at 16, and that the district court could and should consider the absence of the fast-track program when sentencing Balli-Solis, the district court and Balli-Solis's counsel engaged in the following exchange:

> THE COURT: Well, Mr. Gant, the guidelines are uniform and they're universally to be applied.
> MR. GANT: Yes, Your Honor.
> THE COURT: You've quoted this article that says in those three federal districts [with the fast-track program] the average sentence is—
> MR. GANT: 32 months.
> THE COURT: —32 months or so. That suggests to me they're not following the guidelines.

---

[5]Fast-track programs "expedite[] illegal reentry cases by, for example, allowing a defendant otherwise potentially chargeable under 8 U.S.C. § 1326(b) to plead guilty to a violation of 8 U.S.C. § 1326(a), which carries a maximum term of two years." *United States v. Perez-Vasquez*, 570 F.3d 692, 695 (6th Cir. 2009) (internal quotation marks omitted); *see also United States v. Camacho-Arellano*, No. 07-5427, --- F.3d ---, 2010 WL 2869394, at *3 (6th Cir. July 16, 2010) (citing *United States v. Hernandez-Cervantes*, 161 F. App'x 508, 510 (6th Cir. 2005) (unpublished opinion), which explains that border areas use fast-track programs "to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues").

> MR. GANT: Or they are looking at the guidelines and saying the sentences that are being imposed for this kind of violation may well be too harsh. But clearly, Your Honor, given the discretion that you do have now under *Rita*, you can look at this and take into consideration the policies behind the sentences, the proposed range of sentences. I'm asking you to do that.
>
> THE COURT: I would say that means there are 91 districts that apparently don't agree with you.
>
> MR. GANT: Well, I would say in response to that, Judge, I'm only aware of the three. I believe that there are probably more than three districts where there are fast track programs.
>
> THE COURT: I suspect there are. I wish we had one here. We don't. We could establish one, but we haven't. We're awfully busy here. But I don't think the fact that you have a fast track program would alter the meaning of the guidelines, which are uniform and are to be applied by all the judges under the same application notes and advisory opinions and court cases.

Doc. 27 (Sent. Hr'g Tr. at 16–18). The Government responded to this exchange by noting that although the Sixth Circuit had "not specifically ruled" on the issue of whether a district court could consider the fast-track disparity, "several circuits ha[d] rejected th[e] very fast track argument" that Balli-Solis was urging the district court to credit. *Id.* at 23. The Government further argued that "any variance that may be created by fast track districts in sentencing illegal reentry defendants to a slightly lower sentence should not play any part in sentencing in districts where there is no fast track" because the fast-track program is a congressional policy and "courts don't really have discretion to go against that policy unless Congress changes it." *Id.* at 24.

After hearing the parties' arguments on both the potential disparities under the fast-track program and the overrepresentation of Balli-Solis's criminal history, the district court concluded:

> I don't agree with some of Mr. Gant's arguments, although he makes salient points. I do agree that sentencings are individualized. And it's difficult to categorize these individual sentences, because each defendant has their own case. Some actions are more similar than others, but each of the defendants brings to the Court a

> different set of experiences and oftentimes a different criminal experience. And they are individuals and should be, in the Court's view, treated as such.
>
> But it is important to have guidelines. Guidelines were promulgated in order to ensure there is some uniformity in sentences. But most judges realize that cases are not the same. And so now we have the overriding standard that the judge should impose a sentence that is sufficient but not greater than necessary to meet the goals set forth in a federal statute, 3553(a); and as outlined in the sentencing guidelines, which are advisory.

*Id.* at 27–28. Agreeing with Balli-Solis that his criminal history was overrepresented, the district court "reduce[d] [his] criminal history category one level to V," which resulted in a "recommended guideline range of from 70 to 87 months." *Id.* at 31. At no point did the district court revisit Balli-Solis's fast-track disparity argument, but instead the district court turned to its analysis of the 18 U.S.C. § 3553(a) factors, noting that the repetitive nature of Balli-Solis's offense made it "serious and aggravated." Doc. 27 (Sent. Hr'g Tr. at 38). Ultimately choosing a seventy-month sentence, the district court noted that it was greater than those previously imposed, would afford "just punishment, . . . adequate deterrence[,] . . . protect the public from further crimes[,]") and give Balli-Solis the "opportunity to improve himself." *Id.* at 40. The district court also acknowledged that although Balli-Solis was not "a hardened criminal that is threatening the public," his crime was not victimless because it imposed a financial cost on the United States and its citizens. *Id.* at 39. Finally, concluding that a consecutive sentence for the supervised-release violation was mandatory, the district court ordered that Balli-Solis serve his twelve-month sentence consecutive to the seventy-month sentence, resulting in a total sentence of eighty-two months. Balli-Solis timely appealed.

## II.  ANALYSIS

### A.  Standard of Review

This court reviews sentences under the advisory U.S. Sentencing Guidelines for reasonableness, *United States v. Booker*, 543 U.S. 220, 245, 261 (2005), which includes both a procedural and a substantive component, *Gall v. United States*, 552 U.S. 38, 51 (2007).  We must "first decide whether the sentence is procedurally reasonable, and then we address its substantive reasonableness."  *United States v. Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009).  Procedural unreasonableness includes when a sentencing court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Gall*, 552 U.S. at 51; *see also United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).  "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)."  *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).  "'A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor.'"  *Id.* at 633 (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)).

On appeal, Balli-Solis asserts that his sentence is unreasonable for two reasons:  (1) the district court had discretion to vary categorically from the Guidelines based on the fast-track

disparity and yet failed to recognize that it had the discretion to do so,[6] and (2) the § 3553(a) factors do not justify the sentence imposed because the Guidelines-enhancing conviction was stale and Balli-Solis's criminal history is otherwise limited. Because the district court possessed authority to vary categorically from the Guidelines based on the unavailability of the fast-track program, we conclude that Balli-Solis's sentence is procedurally unreasonable and remand for resentencing. In light of the district court's procedural error, we decline to address Balli-Solis's additional argument that his sentence was substantively unreasonable. *See Barahona-Montenegro*, 565 F.3d at 986.

## B. Consideration of the Fast-Track Disparity Argument

Balli-Solis's primary argument on appeal is that the district court was empowered to vary categorically from the Guidelines based on the fast-track disparity and erred in concluding that it did not have the discretion to do so. We agree with Balli-Solis's claim.

As we recently made clear in *United States v. Camacho-Arellano*, "[t]o the extent that . . . our . . . cases suggest that sentencing judges *may not* reduce sentences based on the fast-track disparity, . . . any such rule does not survive the Supreme Court's decision in *Kimbrough* [*v. United States*, 552 U.S. 85 (2007)]," as clarified by *Spears v. United States*, 129 S. Ct. 840, 843 (2009). *United States v. Camacho-Arellano*, --- F.3d at ---, 2010 WL 2869394, at *4. "*Kimbrough* and . . .

---

[6]Although Balli-Solis styles this argument as being one of substantive reasonableness, this type of challenge is properly considered a challenge to the procedural reasonableness of a sentence. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 580 (6th Cir. 2009). Because the Government concedes that Balli-Solis preserved the fast-track claim regardless of its classification, *see* Appellee Br. at 20 n.1, and that concession is supported by the record, we will analyze Balli-Solis's argument under the rubric of procedural reasonableness.

*Spears* made clear that district judges could vary from the Guidelines based on policy disagreements," and because "we have held[] that [the] authority [to vary categorically on policy grounds] is not limited to the crack/powder cocaine context," *id.* at *5, district courts are not precluded from considering the fast-track argument. *Id.* at *6.

*Camacho-Arellano* plainly controls the disposition of the instant case; the district court was not prohibited from considering Balli-Solis's argument that the district court could vary categorically in light of the fast-track disparity, despite the Government's protestations to the contrary. And, as in *Camacho-Arellano*, we must remand the instant case to the district court to allow it to fashion a new sentence with an understanding of the entirety of its post-*Kimbrough* and *Spears* discretion. Simply stated, "the district court could not have been aware of its discretion to sentence" Balli-Solis "based on its disagreement with fast-track policies or the disparities a fast-track sentencing regime creates" because several cases in this Circuit prior to the Supreme Court's decision in *Spears* "had held that district courts lack[ed] the power to vary from guidelines provisions when they disagree[d] with the applicable guidelines." *Camacho-Arellano*, --- F.3d at ---, 2010 WL 2869394, at *6.

Moreover, there are explicit statements in the record indicating that the district court felt bound by the Guidelines in Balli-Solis's case, which further exemplifies the need for a remand. For example, when Balli-Solis initially asked the district court to vary based on the fast-track disparity, the district court immediately responded that "the guidelines are uniform and they're universally to be applied." Doc. 27 (Sent. Hr'g Tr. at 16–17); *see also id.* at 17–18. Even if these statements alone are somehow ambiguous, we cannot turn a blind eye to the context within which the district court

made those statements. The Government's primary assertion against Balli-Solis's fast-track claim was that district "courts don't really have discretion" to consider the disparity because the fast-track program is the product of congressional policy, *id.* at 23–24. *Cf. Moore v. United States*, 129 S. Ct. 4, 5 (2008) (explaining that the Eighth Circuit should have remanded when the district court stated that "Congress [is the one] that looks at the [G]uidelines and decides whether or not they should be put . . . in force . . ." (second alteration in original internal quotation marks omitted)); *United States v. Vandewege*, 561 F.3d 608, 610 (6th Cir. 2009) (remanding when the district court stated that it "believe[d] that policy judgments of whether crack and powder are equivalent or not [was] not for [it] to make"). As highlighted above, however, after *Kimbrough* and *Spears*, this is plainly not the case. Because the district court was not aware, and, in fact, could not have been aware, of its power to vary from the Guidelines based on the fast-track disparity, a remand for resentencing is required.

## C. Consecutive Sentences for Supervised Release Violation

As a final note, notwithstanding the fact that Balli-Solis did not challenge in his appellate brief the district court's erroneous conclusion that a consecutive sentence for Balli-Solis's supervised-release violation was mandatory, we take the opportunity to clarify the district court's clear legal error so as to avoid the same problem on remand.

Title 18, § 3584(a), of the U.S. Code provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently *or* consecutively." 18 U.S.C. § 3584(a) (emphasis added). This Circuit has interpreted § 3584(a) as

providing district courts with discretion to impose either consecutive or concurrent sentences in light of the § 3553(a) factors. *See, e.g.*, *United States v. Maney*, 226 F.3d 660, 665 (6th Cir. 2000). Chapter 7 of the U.S. Sentencing Guidelines—which contains policy statements—also speaks to the propriety of consecutive versus concurrent sentences and provides that "[a]ny term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving." U.S.S.G. § 7B1.3(f) (2002). In *United States v. Sparks*, 19 F.3d 1099 (6th Cir. 1994), a panel of this court addressed the tension between § 3584(a)'s permissive language and the seemingly mandatory nature of § 7B1.3(f). The *Sparks* panel concluded that "[s]ince Congress ha[d] specifically given district courts the discretion to impose consecutive or concurrent sentences under [§ 3584(a)], the Sentencing Commission policy statement favoring consecutive sentences [in Chapter 7 of the Guidelines] *cannot* be binding on the trial judge." *Id.* at 1101 n.3. As a result, the panel held that the "district court [had] erred in concluding that it had no discretion [to impose a concurrent sentence]," *id.* at 1100, and remanded the case for resentencing.

The instant case is analogous to *Sparks*. Based on the sentencing transcript, it is evident that the district court seized solely upon the obligatory language of § 7B1.3(f)'s policy statement and was unaware of its discretion to decide whether a consecutive or concurrent sentence was proper in light of the § 3553(a) factors. Not only did the district court interpret § 7B1.3(f) as "requir[ing] that any term of imprisonment imposed upon revocation of supervised release . . . be served consecutive to the sentence imposed" for the § 1326 offense, Doc. 27 (Sent. Hr'g Tr. at 8–9), but the district court

never once alluded to or recognized its discretion to impose a concurrent sentence under § 3584(a) by reference to the statute or otherwise. Instead, the district court concluded that the "mandatory consecutive nature of the sentence for [Balli-Solis's] violation of supervised release" required "a total sentence of 82 months." *Id.* at 38. Under the circumstances, there is no question that the district court concluded "that it had no discretion" to impose a concurrent sentence. *Sparks*, 19 F.3d at 1100. The law is clear in this Circuit, however, that this conclusion was wrong.[7]

## III. CONCLUSION

For the aforementioned reasons, we conclude that Balli-Solis's sentence was procedurally unreasonable. We **VACATE** the judgment of the district court and **REMAND** for resentencing.

---

[7]At oral argument, the Government conceded that the district court erred.