**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0841n.06

No. 10-5744

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | | **FILED**<br>***Dec 14, 2011***<br>LEONARD GREEN, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **SANDRO SANCHEZ-DURAN, aka** | ) | WESTERN DISTRICT OF TENNESSEE |
| **SANDRO S. DURAN, SARANO DURZAN** | ) | |
| **SANCHEZ and SANDRO DEIAN,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

**BEFORE: GUY, KETHLEDGE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Defendant Sandro Sanchez-Duran appeals his thirty-month sentence imposed after he pleaded guilty of illegal re-entry into the United States. 8 U.S.C. § 1326(a), (b)(2). Sanchez-Duran contends his sentence was procedurally unreasonable because the district court did not recognize its authority to vary from the Sentencing Guidelines range based upon a belief that the fast-track disparity is unwarranted. Sanchez-Duran also contends his sentence was substantively unreasonable because the district court failed to give proper weight to mitigating circumstances. Because we conclude that the district court was unaware of its discretion to find unwarranted the disparity created by the existence of fast-track programs in other jurisdictions and vary accordingly from the Guidelines, we **VACATE** the judgment of the district court and **REMAND** for resentencing.

**I.**

After Sanchez-Duran was taken into custody on a charge of possession of a controlled substance (cocaine) with intent to manufacture, deliver or sell, police officers contacted Immigration and Customs Enforcement ("ICE"), and ICE determined Sanchez-Duran was an alien unlawfully present in the United States. Later, Sanchez-Duran was taken into ICE custody and ICE agents determined he had been previously removed from the United States on February 10, 2004 via Brownsville, Texas. Sanchez-Duran provided a sworn statement admitting that he illegally returned to the United States by walking across the border near Laredo, Texas. A federal grand jury charged Sanchez-Duran with one count of illegal re-entry into the United States. 8 U.S.C. § 1326(a), (b)(2). On February 25, 2010, Sanchez-Duran pleaded guilty to the one-count indictment.

The PSR calculated a base offense level of 8, based on U.S.S.G. § 2L1.2 for unlawfully entering or remaining in the United States. The PSR listed multiple drug-related convictions on Sanchez-Duran's criminal history record, including the conviction for which he was deported, a 2003 conviction for possession with intent to sell 3,199 grams of marijuana, for which he was sentenced to one year of imprisonment.

The PSR added a twelve-level enhancement under U.S.S.G. § 2L1.2(b)(1)(B) for re-entry after a conviction for a felony drug trafficking offense for which the sentence imposed was thirteen months or less. After a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, Sanchez-Duran's total offense level was seventeen. The PSR calculated Sanchez-Duran had six criminal history points for a criminal history category of III. The recommended Guidelines range was between thirty and thirty-seven months.

Sanchez-Duran's sentencing hearing was held on June 8, 2010. Sanchez-Duran submitted a position paper with respect to the sentencing factors, in which he argued, *inter alia*, that the absence of a fast-track program in the Western District of Tennessee created a sentencing disparity with defendants sentenced in districts that do have such programs. The position paper argued that after the Supreme Court's holding in *Kimbrough v. United States*, 552 U.S. 85 (2007), "the district court may consider the disparity in sentencing that exists in the fast track districts versus the non-fast track districts in making a determination whether the disparity in sentencing is an unwarranted violation of the 3553(a) factors, thereby creating a sentence that is 'greater than necessary.'"

During the sentencing hearing, Sanchez-Duran's attorney, Ms. Holt, once again presented the fast-track disparity argument, but noted that the Sixth Circuit had rejected the argument that the disparity was unwarranted in *United States v. Hernandez-Fierros*, 453 F.3d 309, 313 (6th Cir. 2006). However, she argued that the district court could, notwithstanding that case, still make the determination whether the four-level decrease is warranted in the case at hand. In response, the Government argued:

> As to the argument about a fast-track disparity, I think of course, as Ms. Holt recognizes, the Sixth Circuit has rejected that argument. Furthermore, I mean, the question is whether there is any warranted or unwarranted disparity. The fact is, it's permissible for certain districts to have fast-track programs and others not, and so any disparity is warranted unless Congress does otherwise. And I think this is a policy argument that goes to congressional discretion, and is not proper for court consideration given the warranted, unwarranted consideration. The fact is there are – – the different programs are allowed, so disparities are warranted.

In ruling on the fast-track disparity issue, the district court stated:

> [I]t is either four or five states that have the fast-track program. The rest of us, the remaining 45 or 46 states do not have the fast-track program. But basically in the

states where the fast-track program is in effect or in the districts where the fast-track program is in effect, there can be and there is a four-level reduction because of a belief that there is some disparity in the sentencing, and actually a defendant in those states, if the defendant comes in and doesn't contest that he or she's illegally in the United States and doesn't contest really the previous information that's been provided as far as that individual, then they can plead guilty and get the benefit of acceptance of responsibility and also a four-level reduction for entering an early plea in the offense. So unfortunately, that's the part that the Sixth Circuit has said that doesn't necessarily, that there is no reason that the courts in the other 46 states are required to consider the fast-track program, even though defendants in those states have an advantage some would argue, and I think that's what Ms. Holt is arguing, that they have an advantage that defendants in other states such as Tennessee don't have. But I think the Sixth Circuit has already addressed that. So I'm not going to find it would be applicable to this case.

After considering additional arguments involving the appropriateness of a twelve-level enhancement under U.S.S.G. § 2L1.2(b)(1)(B), Sanchez-Duran's cultural assimilation, family circumstances and a drug addiction, as well as other traditional 18 U.S.C. § 3553(a) ("3553(a)") factors, the district court sentenced Sanchez-Duran to thirty months incarceration, which was at the bottom of the Guidelines range. Sanchez-Duran timely appealed.

## II.

We review challenges to the reasonableness of sentences for abuse of discretion. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007). A sentence is procedurally unreasonable if the district court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is substantively unreasonable if a district court "selects a sentence arbitrarily,

bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives

an unreasonable amount of weight to any pertinent factor." *See United States v. Camiscione*, 591

F.3d 823, 832 (6th Cir. 2010) (citation omitted). A sentence that falls within the advisory Guidelines

range is given a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382,

389 (6th Cir. 2008).

In choosing a sentence, a district court must consider the § 3553(a) factors, including "the

need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). At sentencing, Sanchez-Duran

argued for a variance in the calculated Guideline sentence on the basis that defendants charged with

illegal re-entry in fast-track jurisdictions[1] are eligible for a four-level reduction in their offense level,

---

[1]We have previously discussed the history of fast-track programs:

> Fast-tracking arose initially in border areas with large illegal immigration caseloads. Prosecutors sought to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues. Congress approved and set standards for this process in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2008 ("PROTECT Act"), Pub. L. 108–21, 117 Stat. 650, which required the United States Sentencing Commission to "promulgate ... a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act, § 401(m)(2)(b), 117 Stat. 675. The Sentencing Commission responded by promulgating a new Guideline authorizing a four-level reduction. U.S.S.G. § 5K3.1.

*See United States v. Camacho-Arellano*, 614 F.3d 244, 247-48 (6th Cir. 2010) (quoting *United States v. Hernandez-Cervantes*, 161 F. App'x 508, 510 (6th Cir. 2005)).

and the disparity in sentencing between such jurisdictions and non-fast-track jurisdictions such as the Western District of Tennessee is unwarranted and creates a sentence that is greater than necessary under § 3553.

As we noted in *United States v. Camacho-Arellano*, 614 F.3d 244, 248 (6th Cir. 2010), prior to the Supreme Court's ruling in *Kimbrough*, the law of this Circuit was that, although district courts were obligated to consider all the §3553(a) factors and consider the unique circumstances of each case, a district court lacked the authority to vary from a Guidelines sentence due to the court's disagreement with the policy underlying the Guideline. *See United States v. Gaines*, 122 F.3d 324, 330–31 (6th Cir. 1997); *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quoting a statement in *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006), that "[a] sentence may be substantively unreasonable if the court . . . rejects policies articulated by Congress or the Sentencing Commission").

*Kimbrough* held that a district court may "conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 552 U.S. at 110. In *Spears v. United States*, the Supreme Court clarified that *Kimbrough* allowed a district court to "vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." 555 U.S. 261, 264 (2009) (emphasis in original).

In 2010 we extended *Kimbrough* to the context of fast-track programs in *Camacho-Arellano*. There, the defendant pled guilty to illegal reentry into the United States but the district court rejected his request for a lower sentence based on the disparity created by the existence of fast-track programs

in other jurisdictions that reduce the offense level of similarly situated defendants in those jurisdictions by four levels. *Camacho-Arellano*, 614 F.3d at 245.

After finding that *Kimbrough* was not limited to the crack/powder cocaine context, this Court "repudiate[d] any prior hint that district judges could not grant variances based on the fast-track disparity," including based on policy disagreements with that disparity. *Id.* at 250. In remanding for resentencing, this Court noted,

> Because our precedents at the time of sentencing prohibited district court judges from granting a variance based on a disagreement with a guidelines policy, and because *Kimbrough* put that theory to rest, we remand the case to the district court for resentencing. Camacho–Arellano sufficiently preserved a *Kimbrough*-like argument with respect to the fast-track guidelines. . . . But the district court could not have been aware of its discretion to sentence Camacho–Arellano based on its disagreement with fast-track policies or the disparities a fast-track sentencing regime creates. The court sentenced Camacho–Arellano before the Supreme Court decided *Kimbrough* and *Spears*, and in several cases this court had held that district courts lack the power to vary from guidelines provisions when they disagree with the applicable guidelines. . . . In light of those precedents, the district court could not have envisioned the discretion *Kimbrough* and *Spears* give it.

*Id.*

Here, Sanchez-Duran was sentenced after the Supreme Court's rulings in *Kimbrough* and *Spears*, but prior to this Court's ruling in *Camacho-Arellano*. Sanchez-Duran argues for remand on the basis that the district court did not recognize it had discretion to consider the fast-track argument because it did not have the benefit of the *Camacho-Arellano* decision applying *Kimbrough* to fast-track programs.

The Government argues there is no support in the record for Sanchez-Duran's claim that the district court did not recognize it had discretion to consider the fast-track argument. According to

the Government, the district court's reasoning at sentencing was consistent with *Camacho-Arellano* because the district court never indicated that it *was not permitted* to consider the fast-track argument, but merely that it believed it was not *required* to consider the fast-track disparity, which is consistent with prior Sixth Circuit case law allowing district courts to consider a fast-track argument as one factor in the § 3553 analysis. *See United States v. Hernandez-Fierros*, 453 F.3d 309, 313 (6th Cir. 2006) (holding that the need to avoid sentencing disparity due to existence of fast-track programs is only one of the factors that a district court should consider in determining an appropriate sentence, and does not by itself require a below-Guidelines sentence). Accordingly, the district court committed no error, the Government argues.

However, it is not clear that the district court recognized it had discretion to vary categorically from the Guidelines based on the fast-track disparity. Notwithstanding the word "required," the district court's discussion can be read to suggest it believed it lacked discretion because the issue had already been settled in the Sixth Circuit. After noting how the fast-track program works in the states that have it, the district court stated

> So unfortunately, that's the part that the Sixth Circuit has said that doesn't necessarily, that there is no reason that the courts in the other 46 states are required to consider the fast-track program, even though defendants in those states have an advantage some would argue, and I would think Ms. Holt is arguing, that they have an advantage that defendants in other states such as Tennessee don't have. But I think the Sixth Circuit has already addressed that. So I'm not going to find it would be applicable to this case.

The district court thus found the fast-track disparity not to be "applicable," because "unfortunately," the "Sixth Circuit has already addressed that," suggesting the district court believed it lacked discretion to consider Sanchez-Duran's argument as to the fast-track disparity. The district court's

statements here are similar to the district court's statements in *Camacho-Arellano*, where the four-

level reduction for the fast-track disparity was initially rejected on the following grounds:

> But as [the government] has indicated, the Sixth Circuit has—at least in this Court's opinion—has indicated that a trial court's determination that a Fast Track Program or Fast Track process is not something that is erroneously—or that if the Court decides to reject it, that would not be an erroneous determination. The Court believes that Tennessee obviously not being a border state, it doesn't have the circumstances that I believe are present in some of the states like Texas or New Mexico, or things of that nature, where the problem is a major situation. So, the Court is not going to—does not believe that is an appropriate manner in which to handle this case.

*Camacho-Arellano*, 614 F.3d at 246. By stating, "if the Court decides to reject [the fast-track

argument], that would not be an erroneous determination," the district court in *Camacho-Arellano*

similarly indicated that the fast-track reduction was not *required* rather than not *permitted*. We did

not find this distinction relevant enough to note, and remanded for resentencing on the basis that the

district court could not have been aware of its discretion to vary categorically from the Guidelines

based on its disagreement with fast-track policies after *Kimbrough* and *Spears*.

Furthermore, the ambiguity in the district court's statements should be viewed in the context

in which they were made—that is, in response to the arguments presented to the court by counsel for

Sanchez-Duran and the Government. In arguing for a four-level reduction, Sanchez-Duran's

attorney cited *Hernandez-Fierros* as contrary authority, and noted at sentencing that the Sixth Circuit

had previously ruled that "the fact that people in non-fast-track districts didn't get that four-level

decrease . . . didn't create an unwarranted disparity in sentencing." In its response, the Government

stated that with respect to the fast-track argument, "as Ms. Holt recognizes, the Sixth Circuit has

rejected that argument." Additionally, the Government argued that because the fast-track program

is a creation of Congress, "any disparity is warranted unless Congress does otherwise. And I think this is a policy argument that goes to congressional discretion, and is not proper for court consideration given the warranted, unwarranted consideration. The fact is there are – – the different programs are allowed, so disparities are warranted."

The Government's argument at sentencing, and Sanchez-Duran's acknowledgment of contrary authority, were consistent with a statement in *United States v. Hernandez-Fierros*, which, in addition to holding that the fast-track disparity does not *require* the granting of a variance, went on to find that the disparity was warranted because it was implicitly sanctioned by Congressional policy. 453 F.3d at 314 ("fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts. As a result, such a disparity does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities.") However, in *Camacho-Arellano* this Court decisively rejected the argument that Congress either explicitly or implicitly believed the disparity is warranted:

> We find [attempts to distinguish *Kimbrough* by reading it as authorizing district courts to vary based on disagreements with Guidelines policy but not congressional policy] unpersuasive. First, the idea that Congress believes the disparity is warranted derives from the PROTECT Act, but the Act "neither forbids nor discourages the use of a particular sentencing rationale, and it says nothing about a district court's discretion to deviate from the guidelines based on fast-track disparity." . . . In effect, while Congress intended to create room for courts in fast-track jurisdictions to treat defendants in a certain manner, it did nothing to prohibit judges in non-fast-track districts from treating defendants the same way. Second, to the extent that Congress impliedly communicated that the disparity was warranted . . . that fact does not distinguish this case from Kimbrough. There, the government had argued that by enshrining the 100–to–1 ratio in the mandatory minimum sentences of the Anti Drug Abuse Act of 1986, Congress had implicitly endorsed the disparity in the Guidelines. The Court responded that "[t]he statute says nothing about the appropriate sentence within [the specified sentencing range], and we decline to read any implicit directive

-10-

> into that congressional silence." . . . Third, even if Congress could be said to have
> endorsed some disparity between defendants in fast-track and non-fast-track districts,
> it has not endorsed the further disparity that is created by charge bargaining. In some
> districts, instead of (or in addition to) moving for a downward departure of up to four
> offense levels, prosecutors will dismiss certain charges in exchange for a guilty plea.
> . . . Surely, judges in districts in which such charge bargaining is not routine for
> illegal-reentry defendants would be justified in imposing reduced sentences based on
> the disparity created by this prosecutorial practice.

*Camacho-Arellano*, 614 F.3d at 249–50 (citations and footnote omitted).

The district court did not have the benefit of this reasoning at the time of Sanchez-Duran's sentencing. Given that *Camacho-Arellano* discredited the Government's argument that the fast-track disparity should not be disturbed because it reflected congressional policy, we find persuasive our reasoning in a 2010 unpublished decision in a case with substantially similar facts that "[e]ven if [the district court's] statements alone are . . . ambiguous, we cannot turn a blind eye to the context within which the district court made those statements." *United States v. Balli-Solis*, 396 Fed App'x 288, 294 (6th Cir. 2010) (remanding for resentencing where "the Government's primary assertion against [defendant's] fast-track claim was that district courts don't really have discretion to consider the disparity because the fast-track program is the product of congressional policy") (internal quotation marks omitted). Here, similarly, to the extent the district court holding is ambiguous, it should be viewed in light of the Government's urging of the impermissible holding.

Even though Sanchez-Duran was sentenced after the Supreme Court issued its decisions in *Kimbrough* and *Spears*, statements by Sanchez-Duran's counsel, the Government, and the district court at sentencing indicate that none held the view, later espoused by this Court in *Camacho-Arellano*, that *Kimbrough* operated to permit categorical variance from the Guidelines on the basis

of policy disagreement with the fast-track disparity. The record strongly suggests the district court was unaware of its discretion to find the disparity created by the existence of fast-track programs in other jurisdictions unwarranted and vary from the Guidelines accordingly,[2] thus the sentence was procedurally unreasonable.

Because we find Sanchez-Duran's sentence is procedurally unreasonable, we need not reach the issue whether his sentence is substantively unreasonable.

### III.

For the abovementioned reasons, we **VACATE** the judgment of the district court and **REMAND** for resentencing.

---

[2]The Government also argues in the alternative that even if the court committed error with respect to its treatment of the fast-track argument, the error was harmless because the Defendant was sentenced to the low end of the Guidelines range and because there is no reason to believe the sentence would change on remand, given the district court's consideration of traditional § 3553 factors and Sanchez-Duran's arguments. If the district court had granted a four-level departure, Sanchez-Duran's offense level would have fallen four points to 13 to yield an imprisonment range of 18 to 24 months instead of 30 to 37 months. Accordingly, we find the error was not harmless.