RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0206p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

ISIDRO CAMACHO-ARELLANO,

　　　　　　　　　*Defendant-Appellant.*

No. 07-5427

—————————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20333—J. Daniel Breen, District Judge.

Decided and Filed: July 16, 2010

Before: KENNEDY, MOORE, and SUTTON, Circuit Judges.

—————————————

**COUNSEL**

**ON BRIEF:** Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Stephen P. Hall, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

　　MOORE, J., delivered the opinion of the court, in which SUTTON, J. joined. KENNEDY, J. (pp. 11-13), delivered a separate dissenting opinion.

—————————————

**OPINION**

—————————————

　　KAREN NELSON MOORE, Circuit Judge.  Isidro Camacho-Arellano, a Mexican citizen, pleaded guilty to unlawful reentry into the United States after deportation and was sentenced to fifty-seven months of incarceration.  Camacho-Arellano seeks a remand for the district judge to consider whether to impose a lower sentence based on the disparities created by the existence of "fast-track" early-disposition programs for illegal-reentry cases in other jurisdictions.  He also argues that the district judge's reliance on incorrect information about

1

the prevalence of fast-track programs rendered the sentence procedurally unreasonable. Because Camacho-Arellano was sentenced before *Kimbrough v. United States*, 552 U.S. 85 (2007), and because *Kimbrough* permits district court judges to impose a variance based on disagreement with the policy underlying a guideline (here, the fast-track disparity), we **VACATE** Camacho-Arellano's sentence and **REMAND** the case to the district court for resentencing.

## I.  BACKGROUND

Camacho-Arellano, a Mexican citizen, entered the United States illegally in May 1997, at age fourteen.  On September 23, 2002, he was convicted in Tennessee state court for attempted criminal possession of less than 0.5 grams of cocaine with intent to distribute. The state-court judge sentenced him to two years' imprisonment.  Camacho-Arellano was deported on December 17, 2002 and prohibited from returning.  On March 24, 2006, officers executing a drug raid in Memphis found Camacho-Arellano and 8.8 grams of powder cocaine, which he admitted was his.  He pleaded guilty in state court to possession of cocaine with intent to sell and received a sentence of imprisonment of 11 months, 29 days.

A federal grand jury subsequently indicted Camacho-Arellano on one count of being found in the United States without the permission of the Attorney General after previously having been deported, under 8 U.S.C. § 1326(a)(2), (b)(2).  He pleaded guilty.  At sentencing, the district judge calculated the base offense level for a violation of 8 U.S.C. § 1326 as eight, U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2; added sixteen points for reentry after deportation after being sentenced to over thirteen months in prison for a drug conviction, § 2L1.2(b)(1)(A)(i); and subtracted three points for acceptance of responsibility, § 3E1.1(a), (b), for a total offense level of twenty-one.  With a criminal history category of IV, the applicable Guidelines range was fifty-seven to seventy-one months of imprisonment.  Defense counsel argued that the sixteen-point enhancement was irrational and disproportionate to the offense.  He asked the court to reduce the offense level by four based on the fact that like defendants receive such reductions in districts that employ fast-track early-disposition programs for illegal-reentry defendants.

The district judge considered the advisory Guidelines range and reviewed the sentencing factors listed in 18 U.S.C. § 3553(a).  He noted that Camacho-Arellano had been

deported before, that he was involved in drug crime while unlawfully in the United States, and that his offense was serious. The district judge acknowledged that Camacho-Arellano appeared to have a job waiting for him in Mexico, but emphasized the importance of deterrence, the need to protect the public, and the possibility that Camacho-Arellano would receive counseling for his drug problem in prison. Finally, the district judge addressed Camacho-Arellano's argument for a reduction based on the fast-track disparity:

> Let me address, so that the record will be clear if there is another court that is going to review this, on the question of Fast Track disposition or process that does occur in border states, this Court has previously considered that argument in other cases. Certainly the Court understands that there is a unique situation in the Court's opinion with regard to border states who utilize this program, regrettably because the number of persons who not only come over the first time, but regretfully are repeat offenders, and it's simply a matter of alleviating the courts there and the prison systems in that area to allow persons who have been caught to go back to the country, particularly to Mexico. But as Mr. Hall has indicated, the Sixth Circuit has—at least in this Court's opinion—has indicated that a trial court's determination that a Fast Track Program or Fast Track process is not something that is erroneously—or that if the Court decides to reject it, that would not be an erroneous determination. The Court believes that Tennessee obviously not being a border state, it doesn't have the circumstances that I believe are present in some of the states like Texas or New Mexico, or things of that nature, where the problem is a major situation. So, the Court is not going to—does not believe that is an appropriate manner in which to handle this case.

Dist. Ct. Dkt. Doc. 35 (Sent. Tr. at 14–15). The district judge imposed fifty-seven months of incarceration and two years of supervised release, a sentence at the low end of the Guidelines ranges. Before the close of the sentencing hearing, the district judge asked counsel, "is there anything else that you need me to address?" Defense counsel asked the court to recommend that Camacho-Arellano serve his sentence close to Memphis. The district judge agreed and then asked, "Anything else, sir?" Defense counsel answered "No." *Id.* at 15. Judgment entered on March 21, and Camacho-Arellano timely appealed.

## II.  ANALYSIS

### A.  Standard of Review

The Sentencing Guidelines are advisory, and we review sentences for reasonableness.  *United States v. Booker*, 543 U.S. 220, 245, 261 (2005).  Reasonableness review has two components:  procedural and substantive.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Procedural unreasonableness encompasses "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Id.*; *see also United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).  Substantive unreasonableness focuses on the length and type of the sentence, *see United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009); *United States v. Liou*, 491 F.3d 334, 338, 340 (6th Cir. 2007), and will be found when "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor," *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (internal quotation marks omitted).  Our overlapping description of procedural and substantive factors shows that the line between them "is blurry if not porous."  *Liou*, 491 F.3d at 337.[1]

Camacho-Arellano makes two arguments for relief from his sentence, both based on procedural unreasonableness:  (1) the district judge mistakenly believed that he could not consider the disparity created by the existence of fast-track programs in some jurisdictions and not others; and (2) in rejecting the disparity argument, the district court relied on erroneous information about which districts employed fast-track programs.  Camacho-Arellano did not point out the second error at sentencing, but because the district judge did not ask the *Bostic* question—he asked defense counsel only if there was "anything else"—plain-error review does not apply and we review for

---

[1]The central blurring is that we have described failure to consider the § 3553(a) factors as both procedural and substantive.  *See United States v. Herrera-Zuniga*, 571 F.3d 568, 579 (6th Cir. 2009) (noting this problem).  This blurring may result from the fact that such an error can come in at least two forms:  the procedural error of failing actually to consider all the relevant factors, and the substantive error of imposing a sentence that does not fairly reflect those factors.

reasonableness.  *See United States v. Gapinski*, 561 F.3d 467, 473–74 (6th Cir. 2009) (holding under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), that the question, "Anything else for the record, Ms. Lasker?" was insufficient to trigger plain-error review when objections were not made below).

**B. District Court's Ability to Impose a Variance Based on the Fast-Track Disparity**

In imposing punishment, a district judge must consider the sentencing factors listed in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).  At sentencing, Camacho-Arellano sought a variance based on § 3553(a)(6), in light of the fact that defendants in his position routinely obtain four-level reductions in judicial districts that, unlike the Western District of Tennessee, have fast-track programs.  This court has previously discussed the origin and nature of these programs:

> Fast-tracking arose initially in border areas with large illegal immigration caseloads.  Prosecutors sought to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues.  Congress approved and set standards for this process in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. 108-21, 117 Stat. 650, which required the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney."  PROTECT Act, § 401(m)(2)(b), 117 Stat. 675.  The Sentencing Commission responded by promulgating a new Guideline authorizing a four-level reduction. U.S.S.G. § 5K3.1.

*United States v. Hernandez-Cervantes*, 161 F. App'x 508, 510 (6th Cir. 2005) (unpublished opinion) (citations omitted).  Camacho-Arellano claims that the district court declined to reduce his sentence under § 3553(a)(6) on the basis of Sixth Circuit precedent that foreclosed his fast-track disparity argument.  He now argues that the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007), which

allowed sentencing judges to deviate from the Guidelines based on policy disagreements, throws that case law into doubt.

We begin by clarifying the pre-*Kimbrough* state of the law in this circuit with respect to a district court's authority to premise a variance on disagreement with the policy of a guideline. The seminal case on point is *United States v. Gaines*, 122 F.3d 324 (6th Cir. 1997). In that case, this court held that a district court lacks the authority to vary from a Guidelines sentence due to the court's disagreement with the 100:1 crack-cocaine ratio. *Id.* at 330-31. We specifically rejected the defendant's argument that a district court has the authority to vary from a guideline on the ground that it rejects a policy underlying it. *See id.* Subsequent cases reaffirmed *Gaines* and relied on similar reasoning. *See United States v. Dunlap*, 209 F.3d 472, 481 (6th Cir. 2000); *United States v. Watkins*, 179 F.3d 489, 504 (6th Cir. 1999); *United States v. Ratliff*, No. 96-5334, 1998 WL 13406, at *1 (6th Cir. Jan. 7, 1998) (unpublished opinion).

After *Gaines*, we noted that district courts are still obligated to sentence defendants individually and to consider all of the factors listed in § 3553(a). *See United States v. Coleman*, 188 F.3d 354, 361–62 (6th Cir. 1999) (en banc); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). But although we urged courts to consider the unique circumstances of each case, we continued to forbid them from sentencing a defendant based on the court's disagreement with a Guidelines provision. *See, e.g.*, *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quoting the Fourth Circuit's statement in *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006), that "[a] sentence may be substantively unreasonable if the court . . . rejects policies articulated by . . . the Sentencing Commission"); *United States v. Valentine*, 70 F. App'x 314, 327 (6th Cir. 2003) (unpublished opinion) ("[W]hatever the reasons that the [100:1 crack-cocaine sentencing] disparity exists, it is not a permissible basis for a downward departure."). That some fast-track precedents in our circuit did not foreclose district courts from considering sentencing disparities in individual cases, *see, e.g.*, *United States v. Hernandez-Fierros*, 453 F.3d 309, 313–14 (6th Cir. 2006), does not mean that district

courts had authority to reject the policy underlying a Guidelines provision, including the fast-track disparity.

To the extent that *Gaines* and our other cases suggest that sentencing judges *may not* reduce sentences based on the fast-track disparity, we agree with Camacho-Arellano that any such rule does not survive the Supreme Court's decision in *Kimbrough*. In *Kimbrough*, the Supreme Court held that a district court may "conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 110. The Court later clarified that "the point of *Kimbrough*" was "a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 129 S. Ct. 840, 843 (2009) (internal quotation marks omitted). Since *Kimbrough* was decided, defendants like Camacho-Arellano have argued that its logic allows district courts to disagree with the Guidelines' policy that the disparity created by the availability of fast-track reductions in other districts is not "unwarranted." Five circuits have addressed this argument. The First and the Third Circuits have credited the argument, overruling their contrary precedents in light of *Kimbrough*. *United States v. Rodríguez*, 527 F.3d 221, 231 (1st Cir. 2008); *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 149 (3d Cir. 2009). The Fifth, Ninth, and Eleventh Circuits, by contrast, have rejected the argument and reaffirmed their precedents. *United States v. Gomez-Herrera*, 523 F.3d 554, 563 (5th Cir. 2008); *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740 (9th Cir. 2009); *United States v. Vega-Castillo*, 540 F.3d 1235, 1238–39 (11th Cir. 2008) (split panel).

The latter three circuits distinguished *Kimbrough* by reading it as authorizing district courts to vary based on disagreements with Guidelines policy, not based on disagreements with congressional policy. *Gomez-Herrera*, 523 F.3d at 559; *Gonzalez-Zotelo*, 556 F.3d at 740–41; *Vega-Castillo*, 540 F.3d at 1239. We find this distinction unpersuasive. First, the idea that Congress believes the disparity is warranted derives from the PROTECT Act, but the Act "neither forbids nor discourages the use of

a particular sentencing rationale, and it says nothing about a district court's discretion to deviate from the guidelines based on fast-track disparity." *Rodríguez*, 527 F.3d at 229; *accord Arrelucea-Zamudio*, 581 F.3d at 151.[2]  In effect, while Congress intended to create room for courts in fast-track jurisdictions to treat defendants in a certain manner, it did nothing to prohibit judges in non-fast-track districts from treating defendants the same way.  Second, to the extent that Congress impliedly communicated that the disparity was warranted, *see, e.g.*, *Gomez-Herrera*, 523 F.3d at 562, that fact does not distinguish this case from *Kimbrough*.  There, the government had argued that by enshrining the 100-to-1 ratio in the mandatory minimum sentences of the Anti Drug Abuse Act of 1986, Congress had implicitly endorsed the disparity in the Guidelines. The Court responded that "[t]he statute says nothing about the appropriate sentence within [the specified sentencing range], and we decline to read any implicit directive into that congressional silence." *Kimbrough*, 552 U.S. at 103.  The Court also rejected the contention that Congress had endorsed the Guidelines' disparity by rebuffing a 1995 proposal by the Sentencing Commission to replace the 100-to-1 ratio with a 1-to-1 ratio. *Id.* at 105–06.  In rejecting these arguments, "*Kimbrough* made pellucid that when Congress exercises its power to bar district courts from using a particular sentencing rationale, it does so by the use of unequivocal terminology." *Rodríguez*, 527 F.3d at 230.  Third, even if Congress could be said to have endorsed some disparity between defendants in fast-track and non-fast-track districts, it has not endorsed the further disparity that is created by charge bargaining.  In some districts, instead of (or in addition to) moving for a downward departure of up to four offense levels, prosecutors will dismiss certain charges in exchange for a guilty plea. *See Arrelucea-Zamudio*, 581 F.3d at 152 (describing these "alternative district-wide, early-disposition programs [that] operate outside the bounds of not only the Protect Act, but also Guidelines § 5K3.1").  Surely, judges in districts in which such charge bargaining is not routine for illegal-

---

[2]Moreover, the Act did not actually reduce any defendants' sentences and did not affect sentencing judges' ultimate discretion in accepting or rejecting fast-track reductions, including the discretion to choose anywhere from a one-level to a four-level reduction. *See Arrelucea-Zamudio*, 581 F.3d at 151.

reentry defendants would be justified in imposing reduced sentences based on the disparity created by this prosecutorial practice.

In sum, *Kimbrough* requires that we repudiate any prior hint that district judges could not grant variances based on the fast-track disparity.  *Kimbrough* and its follow-up case *Spears* made clear that district judges could vary from the Guidelines based on policy disagreements.   And as we have held, that authority is not limited to the crack/powder cocaine context.  *Herrera-Zuniga*, 571 F.3d at 585.

Because our precedents at the time of sentencing prohibited district court judges from granting a variance based on a disagreement with a guidelines policy, and because *Kimbrough* put that theory to rest, we remand the case to the district court for resentencing. Camacho-Arellano sufficiently preserved a *Kimbrough*-like argument with respect to the fast-track guidelines.  *See* Doc. 27 (Def.'s Sent. Mem. at 3–4).  But the district court could not have been aware of its discretion to sentence Camacho-Arellano based on its disagreement with fast-track policies or the disparities a fast-track sentencing regime creates.  The court sentenced Camacho-Arellano before the Supreme Court decided *Kimbrough* and *Spears*, and in several cases this court had held that district courts lack the power to vary from guidelines provisions when they disagree with the applicable guidelines.  *See Watkins*, 179 F.3d at 504; *Dunlap*, 209 F.3d at 481; *Gaines*, 122 F.3d at 330–31.  In light of those precedents, the district court could not have envisioned the discretion *Kimbrough* and *Spears* give it.

## C.  Reliance on Erroneous Information About Fast-Track Districts

Camacho-Arellano next argues that the district court's decision not to impose a below-Guidelines sentence was based on the erroneous belief that fast-track programs did not exist outside of states along the southern border.  (In fact, fast-track programs for illegal-reentry defendants also exist in Idaho, Nebraska, Utah, Oregon, and Washington. Dep't of Justice, Feb. 1, 2008 Memo, Reauthorization of Early Disposition Programs, *available at* www.fd.org/pdf_lib/Fast_Track_Reauthorization08.pdf.)    Camacho-Arellano makes this argument despite having represented in his own sentencing memorandum that "only border districts currently employ the fast track program," Doc.

27 (Def.'s Sent. Mem. at 3), and having compared himself to defendants in border districts at the sentencing hearing, Doc. 35 (Sent. Tr. at 5). We need not dwell on this issue, however, as any confusion about the prevalence of fast-track programs may be cleared up on remand.

### III.  CONCLUSION

This court's cases prior to *Kimbrough* repeatedly held that, while district courts must sentence defendants individually, they cannot sentence a defendant by varying from a Guidelines provision because they disagree with the guideline. Thus, the district court could not have been aware of its ability to use its independent judgment about the wisdom of fast-track sentencing regimes to sentence Camacho-Arellano. *Kimbrough* and *Spears* confirmed that district court judges have the power to base a sentence on a policy disagreement with the Guidelines. Therefore, we **VACATE** Camacho-Arellano's sentence and **REMAND** for resentencing.

_____

**DISSENT**

_____

CORNELIA G. KENNEDY, Circuit Judge, dissenting.  Because I believe that this is not an appropriate case to determine whether, after *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 129 S. Ct. 840 (2009), a district court must consider a defendant's argument that disparities created by some districts' fast-track, early-disposition programs for illegal-reentry defendants warrant a lower sentence, I must respectfully dissent.

As the majority opinion notes, when Camacho-Arellano argued that disparity created by fast-track programs justified a sentence reduction in his case, the district court concluded that such a reduction would be erroneous under this circuit's pre-*Kimbrough* precedent.  However, the court also indicated how it would rule if it did have the discretion to modify Camacho-Arellano's sentence in this manner.  At the sentencing hearing, the district judge noted that it "understands that there is a unique situation in the [c]ourt's opinion with regard to border states who utilize this program" due to the higher number of illegal-reentry defendants in those areas, and that the fast-track program is "simply a matter of alleviating the courts there and the prison systems in that area." Sent. Tr. at 14.  He reasoned that "Tennessee obviously not being a border state, it doesn't have the circumstances that I believe are present in some of the states like Texas or New Mexico, or things of that nature, where the problem is a major situation." *Id.* at 15.  He then concluded that "the [c]ourt . . . does not believe [granting a variance] is an appropriate manner in which to handle this case." *Id.*  Instead, he imposed a within-Guidelines sentence that he thought justified by the seriousness of the offense, the need for just punishment, deterrence, and protection of the public, and the history and characteristics of the defendant, emphasizing that Camacho-Arellano had not only reentered the country after being deported, but had committed a drug distribution crime while here illegally.  In my opinion, these remarks show that the district court adequately considered Camacho-Arellano's disparity argument and held that, even assuming it had

the discretion to modify his sentence as Camacho-Arellano requested, it would not do so.

The majority explains its decision to remand the case for resentencing as a recognition that "the district court could not have envisioned the discretion *Kimbrough* and *Spears* give it" to alter a defendant's sentence based on disagreement with fast-track policies or as an unwarranted disparity under § 3553(a)(6). Maj. Op. at 9. First of all, I do not think it obvious that the district court was under the impression that it did not have the discretion to reduce Camacho-Arellano's sentence as he requested. At the sentencing hearing, the Government described the district judge's authority as follows: "So I would submit that *while Your Honor certainly can consider the [fast-track argument]*, I would submit that it should not carry much weight, given that current case law and . . . the other factors of [§] 3553 . . . ." Sent. Tr. at 8 (emphasis added). Further, the district judge characterized Sixth Circuit precedent on this issue as establishing that if "the [c]ourt decides to reject [the fast-track argument], that would not be an erroneous determination," Sent. Tr. at 14–15, not as establishing that he lacked the authority to entertain the argument altogether.

Even if the majority is correct that the district court was not aware of its authority to grant Camacho-Arellano his requested variance, I do not see this as a reason to discredit the district court's explanation of how it would exercise its discretion if it did have that power. Since the Court decided *Spears*, we have vacated some defendants' sentences and ordered a remand "to give the district court an opportunity to impose a sentence with full recognition of its authority to reject and vary from the . . . Guidelines based solely on policy disagreement." *United States v. Johnson*, 553 F.3d 990, 992 (6th Cir. 2009). But we have declined to take this course of action when the record reflects that, even if the district court had the benefit of the rulings in *Kimbrough* and *Spears*, it would not have sentenced a defendant any differently. *See United States v. Guest*, 564 F.3d 777, 779–81 (6th Cir. 2009) (declining to remand case for resentencing in light of *Spears* when record reflected that district court had adequately considered defendant's arguments for a downward variance); *United States v. Porter*, 312 F. App'x 772, 776

(6th Cir. 2009) (unpublished opinion) (declining to remand the case for resentencing because "on the record before us, we have no basis to assume that the district court was unaware of its authority or would have imposed a different sentence post-*Spears*"); *cf. Johnson*, 553 F.3d at 996 n.1 (remanding the case for resentencing because "the district judge was not aware of his power 'to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines,'" but noting that "[o]n the record before us, we have no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion" (quoting *Spears*, 129 S. Ct. at 843–44)).

Neither the Guidelines' recognition of the practice of granting variances pursuant to fast-track programs nor the majority's holding changes the fact that the decision to grant or deny a variance is committed to the discretion of the district court. One aspect of Sixth Circuit precedent noted by the district judge remains intact after this decision: a district court's refusal to grant a variance due to fast-track disparity is not an erroneous determination, as long as it rejects such an argument on the merits. The district judge in this case considered Camacho-Arellano's argument for a variance and indicated that he was not inclined to heed it, as I expect most of the district courts that now will consider this issue will rule. The majority's decision that a district court has the authority to reduce a defendant's sentence to account for fast-track disparity simply does not affect Camacho-Arellano. For this reason, I do not consider this case a proper vehicle for deciding whether *Kimbrough* and *Spears* allow a district court to reduce a defendant's sentence based on discrepancies created by the fast-track program, and would affirm the district court's judgment.[1]

---

[1]I note briefly that I find unavailing Camacho-Arellano's argument that his sentence was procedurally unreasonable because based on the district court's erroneous belief that fast-track programs exist only in border districts. As the majority points out, this belief was based in part on defendant's own representations to the court. *See* Def.'s Sent. Mem. at 3; Sent. Tr. at 5. Furthermore, the district court's reasoning, recounted above, did not indicate that he found geography dispositive when deciding that border states face unique challenges justifying the fast-track program; instead, it was the size of those districts' illegal-reentry dockets that he emphasized.