**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 9, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALEJANDRO DIAZ-DEVIA,

Defendant - Appellant.

No. 10-1149

(D. Colorado)

(D.C. No. 1:09-CR-00443-LTB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

I.     **Introduction**

Plaintiff-Appellant Alejandro Diaz-Devia was convicted of unlawfully reentering the United States following deportation.  At sentencing, Diaz-Devia asked the district court to vary downward from the advisory guidelines range because of the disparity between his advisory sentence and sentences received by defendants convicted of similar conduct in jurisdictions that have fast-track disposition programs for illegal reentry cases.  The district court refused to vary

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

downward and sentenced Diaz-Devia to forty-six months' imprisonment, the low end of the advisory range. Diaz-Devia appeals, asserting the district court committed procedural error by failing to recognize it had discretion to consider his fast-track argument. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **affirm** Diaz-Devia's sentence.

## II.    Background

Diaz-Devia pleaded guilty to one count of unlawful reentry of a deported alien subsequent to conviction for commission of an aggravated felony. *See* 8 U.S.C. §§ 1326(a)(1), (b)(2). A presentence report ("PSR") calculated his advisory guidelines range as forty-six to fifty-seven months' imprisonment, based on a total offense level of twenty-one and a Category III criminal history. Diaz-Devia did not object to the calculation of his offense level or criminal history category but filed a motion seeking a twenty-four-month sentence, which represented a downward variance from the advisory guidelines range. The only argument made in the motion relevant to this appeal is Diaz-Devia's request that the district court vary downward based on the sentencing disparities that result from the adoption of so-called "fast-track" early disposition programs in some

districts.[1]  The district court rejected this argument, and the others made by Diaz-Devia, and imposed the lowest sentence within the advisory guidelines range.

## III.  Discussion

In this appeal, Diaz-Devia does not challenge the calculation of his advisory guidelines range or the substantive reasonableness of his sentence.  He argues, instead, that the district court committed procedural error by failing to recognize it had discretion to vary downward based on the fast-track disparity argument he made at sentencing.  We review a sentencing court's decision to grant or deny a variance under a deferential abuse of discretion standard.  *United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir. 2010).  Diaz-Devia, however, challenges the method the district court used to calculate his sentence, an issue we review de novo.  *Id.*

After reviewing the complete transcript of the sentencing proceeding, we disagree with Diaz-Devia's characterization of the district court's ruling.  Rather than conclude it did not have authority to vary downward based on fast-track disparities, the district court assumed it had that authority.  It then proceeded to consider the merits of Diaz-Devia's argument, ultimately concluding not to vary

---

[1]Fast-track programs were established by the PROTECT Act, which instructed the Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney."  Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003).  The policy statement appears in § 5K3.1 of the Sentencing Guidelines.

downward from the advisory guidelines range. Many statements made by the district court contribute to this interpretation of the sentencing proceeding.

Most importantly, the court began the sentencing hearing by noting it would "assume for sentencing purposes" it had "authority to consider each of [Diaz-Devia's] arguments individually and collectively as a whole" when deciding whether to vary from the advisory guidelines range. This preliminary statement is susceptible to only one meaning—the court proceeded to the merits of Diaz-Devia's arguments after first assuming it had discretion to grant a variance on each ground he raised if it concluded one was warranted. The remainder of the transcript supports this interpretation, revealing the district court rejected Diaz-Devia's fast-track disparity argument based on the view his situation did not warrant the variance, not based on a view it lacked discretion to vary downward to ameliorate fast-track sentencing disparities.

The district court offered several specific reasons for rejecting Diaz-Devia's request for a variance. It began its analysis as follows:

> As a legal matter the defense I think first raises the fast-track disparity argument, which has been considered by me and rejected as a basis for a variant sentence either explicitly or implicitly. And I also note that this argument has been considered and rejected by the Tenth Circuit Court of Appeals in *United States vs. Martinez-Trujillo*, 468 F.3d 1266 (10th Cir. 2006).

In *Martinez-Trujillo*, this court held that the disparity between fast-track sentences and sentences received by defendants in non-fast-track districts is not

unwarranted within the meaning of 18 U.S.C. § 3553(a)(6) because it was specifically contemplated by Congress when it enacted the PROTECT Act. 468 F.3d 1266, 1268-69 (10th Cir. 2006). Thus, we held the sentencing court was foreclosed from relying on the fast-track disparity to support a variance pursuant to § 3553(a)(6). *Id.*

The position that a district court is categorically precluded from varying downward based on sentencing disparities resulting from the existence of fast-track programs has been called into question by recent Supreme Court jurisprudence. *See Spears v. United States*, 129 S. Ct. 840, 842-43 (2009) (per curium) (holding a district court has discretion to vary from the Guidelines based solely on a policy disagreement with the 100:1 ratio for crack and powder cocaine offenses); *Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (holding district courts have authority to consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses when choosing an appropriate sentence); *see also United States v. Rodriguez-Galaviz*, No. 10-1086, 2011 WL 304780, at *2 (10th Cir. Feb. 1, 2011) (unpublished disposition) (acknowledging *Martinez-Trujillo* but nevertheless concluding "the district court had discretion under [*Kimbrough*] to grant a variance in light of the absence of a fast-track program").[2] It is unnecessary to resolve the question of whether, or to what extent, *Spears* and

---

[2]Because "[u]npublished decisions are not precedential," we cite this decision for informational purposes only. 10th Cir. R. 32.1(A).

*Kimbrough* affect our holding in *Martinez-Trujillo* because the district court did not proceed under the belief it was foreclosed from varying downward based on fast-track disparities and it did not reference *Martinez-Trujillo* for that proposition. Instead, after first expressly stating it assumed it had discretion to grant a variance based on Diaz-Devia's arguments considered "individually and collectively," the court noted the existence of *Martinez-Trujillo* and implied it harbored no policy disagreement with the Guidelines because it agreed with the conclusion that fast-track disparities are not unwarranted. The district court, in the exercise of its discretion, was within its power to agree with Diaz-Devia's argument that fast-track disparities are unwarranted just as it was equally within its power to disagree. Thus, Congressional approval of fast-track disparities was one reason relied upon by the district court to reject Diaz-Devia's argument on the merits. There is nothing in the district court's limited reliance on *Martinez-Trujillo* to suggest the court adopted the conclusion that a downward variance was wholly precluded.

The district court expanded on the reasons why it did not disagree with the policy that resulted in a disparity between the sentence faced by Diaz-Devia and the sentence imposed on defendants in a fast-track districts, stating:

> One of my principal bases for rejecting the fast-track argument is that it injects the Court or invites the Court to violate the doctrine of separation of powers. That is, the fast-track procedure was initiated by a separate branch of government, Congress, and is implemented by yet another branch of government, the executive

> branch of our government, through the Attorney General and a United States attorney for a specific district. Obviously Colorado is not one of the districts implementing the fast-track program under the auspices of congressional authorization and executive implementation by the Attorney General and the United States Attorney for the District of Colorado.

This explanation reveals the district court's opinion that any sentencing disparity in Diaz-Devia's case is the wholly permissible result of acceptable differences in local law-enforcement strategies. "The decision to adopt the [fast-track program] in a district is made by the United States Attorney General and the United States Attorney for the district." *Martinez-Trujillo*, 468 F.3d at 1267. By rejecting Diaz-Devia's argument on this basis, the district court was expressing its belief that varying downward in Diaz-Devia's case would have the effect of creating an ad hoc fast-track program in Colorado, a state that does not have such a policy because the United States Attorney for the District of Colorado does not believe one is necessary or because the United States Attorney General has concluded one is not warranted.

The court then offered a third explanation for rejecting Diaz-Devia's argument on the merits.

> I tend to, and I think I have expressed a similar view to that of my colleague, Judge Krieger, that for a court to simply decide that a variant sentence should occur because other districts do implement the fast-track program would invite, rather than mitigate, sentencing disparity.

And of course proportionality is one of the factors specifically referenced for the Court to consider for a statutory—or any sentencing decision under, 18 United States Code, Section 3553(a).

When some, but not all, judges in a non-fast-track district vary based on fast-track arguments, sentencing disparities arise in that district as a consequence. The district court's statement acknowledges that varying downward in Diaz-Devia's case could ameliorate the fast-track disparity in his case but it could also result in a judicially created sentencing disparity in Colorado. The statement makes it clear the court was unwilling to substitute one disparity for another in Diaz-Devia's case.

The district court ended its discussion of Diaz-Devia's argument with the following statement:

> There runs a thread through the defense brief and argument here that in some way *Kimbrough*, which authorized judges to disregard in whole or in part the one hundred to one crack cocaine ratio Guidelines, spills over in a number of ways. If it spills over in some way to the fast-track program, it is my view at this point that *Kimbrough* is limited, and as further clarified in I think *Spears*, to crack cocaine sentencing decisions.

Although this statement, viewed in isolation, could support an argument that the district court believed it only possessed discretion to vary downward based on a disagreement with the policy underlying the crack and powder cocaine guidelines, it cannot be interpreted in that way when read in context with the entire sentencing transcript. At a later point in the hearing, the district court expanded on its prior reference to *Kimbrough* and *Spears*, clarifying that it believed the

sentencing disparity resulting from fast-track programs "nowhere approaches a hundred to one disparity" between crack and powder sentences. In other words, the court indicated that it was disinclined to grant Diaz-Devia a downward variance because it believed fast-track programs did not result in sentencing disparities of the severity and magnitude of disparities created by the powder and crack cocaine guidelines. Once again, the court was simply reiterating its position that it would not vary from the Guidelines in Diaz-Devia's case because it did not disagree with the policy underlying the applicable Guideline.

The district court concluded its discussion of the fast-track issue by stating it was "not persuaded at least as a general proposition *and in this case* that disregard of Sentencing Guidelines based on fast-track programs in other districts [was] warranted." (emphasis added). Read in context with all the prior relevant statements made by the court during sentencing, this final statement is susceptible to only one reasonable interpretation, *i.e.*, the court considered Diaz-Devia's fast-track argument and exercised its discretion to deny the downward variance because it did not disagree with the policy underlying § 5K3.1 of the Sentencing Guidelines providing for a maximum four-level downward departure only when the Government moves for such a departure pursuant to the terms of an early disposition fast-track program.

**IV. Conclusion**

In light of the district court's stated reasons for rejecting Diaz-Devia's fast-track argument, we conclude the sentence imposed by the court was not procedurally unreasonable. Diaz-Devia's sentence is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

10-1149, *United States v. Diaz-Devia*

**HOLLOWAY**, Circuit Judge, dissenting:

**I**

I cannot join the majority's proposed order and judgment in this case. I have concluded that we should instead remand for re-sentencing. Accordingly, I must respectfully dissent.

First, I am not persuaded that the district judge recognized that he had the discretion whether to grant the downward variance sought by Mr. Diaz-Devia. It is true that some of the judge's comments suggest that he held the view that he had such discretion, and the majority has collected and highlighted those comments. I, however, find more in the judge's comments to support the interpretation that he was persuaded as a matter of law that he *could not* grant the variance, as I shall demonstrate in Part II of this dissent.

Because it is unclear whether the district judge was exercising his discretion, or instead was following the binding precedent of this court which told him that he *could not* grant Mr. Diaz-Devia's motion, I could only join in the result reached by the majority if I thought that our precedent was still valid. But I will explain in Part III of this dissent that I do not believe that precedent is still valid.

Unable to join in the majority's belief that the confusing and self-contradicting statements by the district judge clearly reveal that the precedent was not being relied on, I cannot join in affirming a sentence which may be based on a

legal principle which I believe should be recognized to have been abrogated. The majority of the circuits that have reached the question have overruled their precedents analogous to ours. And significantly, the government in this case has formally notified this court that it no longer takes the position that our precedent retains its validity.

A brief overview of the relevant legal landscape will provide context for the discussion below. Sentencing under the United States Sentencing Guidelines was radically transformed by *United States v. Booker*, 543 U.S. 220 (2005), in which the Court held that the Guidelines must be regarded as advisory rather than mandatory. Meanwhile, courts in districts abutting the international border with Mexico were struggling with an enormous number of immigration cases like this one, involving illegal re-entry into this country by an alien who had previously been deported after conviction for a criminal offense. In some districts, prosecutors devised early disposition programs that are now commonly referred to as "fast-track" programs.

> Fast-track sentencing programs originated with federal prosecutors in states bordering Mexico, who were faced with increasing numbers of illegal reentry and other immigration cases. They accordingly designed programs whereby defendants accused of certain immigration offenses would plead guilty early in the process and waive their rights to file certain motions and to appeal, in exchange for a shorter sentence. The shorter sentence was accomplished either by charge-bargaining or by promising to recommend a downward departure at sentencing.

In 2003, Congress endorsed the fast-track concept in a provision of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Pub.L. No. 108-21, 117 Stat. 650 (2003) (codified in scattered Sections of 18, 28, and 42 U.S.C.). A provision of the PROTECT Act directed the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." . . . .

In jurisdictions where fast-track programs have been authorized by the Attorney General, defendants must agree to the factual basis [of the criminal charge] and waive the rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel).

*United States v. Morales-Chaires*, 430 F.3d 1124, 1127 (10th Cir. 2005) (internal citations and quotation marks omitted).[1]

Colorado, where Mr. Diaz-Devia was prosecuted, does not have a fast-track program. The central issue in the instant appeal is whether the existence of fast-track programs in some judicial districts is a factor that a judge in a district without such a program may consider and on the basis of which a judge might vary downward from the recommended Guideline range in sentencing an individual like Mr. Diaz-Devia. We have held, after *Booker*, that sentencing disparities caused by the existence of fast-track programs are not "unwarranted"

---

[1]Although fast-track programs were authorized and are used primarily in districts situated on international borders where cases like the instant case have created burdensome caseloads, fast-track programs have also been approved in several districts with extraordinarily low incidences of such cases. *See United States v. Gramillo-Garcia*, 632 F.Supp.2d 837, 839-40 (N.D. Ill. 2009).

within the meaning of 18 U.S.C. § 3553(a)(6) and so can not be used to justify a downward variance from a recommended guideline range. *United States v. Martinez-Trujillo*, 468 F.3d 1266 (10th Cir. 2006).

The year following our decision in *Martinez-Trujillo*, the Supreme Court issued an important decision on implementation of the *Booker* holding, *Kimbrough v. United States*, 552 U.S. 85 (2007), which is of particular importance in this appeal because Mr. Diaz-Devia bases his primary argument on the contention that *Kimbrough* effectively abrogated *Martinez-Trujillo*.

In *Kimbrough*, the Supreme Court reversed the judgment of the Court of Appeals for the Fourth Circuit which had reversed the sentence imposed by the district court in a crack cocaine case. The sentencing judge had decided that a sentence within the recommended Guideline range would have been greater than necessary to achieve the purposes set out in 18 U.S.C. § 3553(a), and the judge reasoned that this excessiveness was largely the result of the controversial Guidelines provision that set offense levels for crimes involving cocaine. That provision employed a 100-1 ratio, in which the quantity of powder cocaine necessary to reach the threshold for a particular offense level was one hundred times the quantity of crack cocaine that would yield the same offense level.

The district judge sentenced Mr. Kimbrough to the statutory minimum term, which was substantially less than the advisory Guidelines range. On appeal the Fourth Circuit reversed, holding that a sentence outside of the advisory

Guidelines range was per se unreasonable when based on a disagreement with the policy choice embodied in the 100-1 crack to powder ratio. The Supreme Court reversed and held that:

> [U]nder *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only, and that the Court of Appeals erred in holding the crack/powder disparity effectively mandatory. A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing. In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses.

552 U.S. at 91.

This is the context for the primary contention Mr. Diaz-Devia advances in this appeal, that *Kimbrough* has effectively abrogated *Martinez-Trujillo*. Mr. Diaz-Devia thus argues that, to paraphrase *Kimbrough*, a judge may determine in a particular case that a within-Guidelines sentence is greater than necessary to accomplish the objectives of sentencing and that in making that determination, the judge may consider the disparity between sentences for illegal re-entry in districts with fast-track programs and districts without them.

## II

The majority here, however, finds it unnecessary to rule on Mr. Diaz-Devia's argument, concluding instead that although the district judge cited

*Martinez-Trujillo*, he did not follow that binding precedent and that the judge did not believe that he was precluded from granting a downward variance as Mr. Diaz-Devia requested. I find that the judge's remarks show that these conclusions are likely incorrect.

As the majority notes, without acknowledging its import, the district judge began his analysis by referring to Mr. Diaz-Devia's argument for a variance as a "legal matter," and one that he had previously rejected, observing that one of his "principal bases" for rejecting the argument previously was his view that adopting the argument would invite the court to violate the doctrine of separation of powers. The judge then noted that this court had rejected the argument in *Martinez-Trujillo*, which of course was binding precedent of our court to the effect that Mr. Diaz-Devia's argument must be rejected as a matter of law.

Usually when a district judge in our circuit cites one of our precedential opinions, it is to follow that opinion. But the majority here somehow determines that in this case the district judge cited the case for some other reason. That conclusion might be plausible had the judge given any indication that he agreed with Mr. Diaz-Devia that *Kimbrough* provided reason to doubt the continuing vitality of *Martinez-Trujillo*. But in his two references to *Kimbrough*, the judge made it clear that he did *not* agree with Mr. Diaz-Devia's argument.

First, the judge made a statement which indicates in clear terms that he had considered *and rejected* Mr. Diaz-Devia's legal argument:

-6-

> There runs a thread through the defense brief and argument here that in some way *Kimbrough*, which authorized judges to disregard in whole or in part the one hundred to one crack cocaine ratio Guidelines, spills over in a number of ways. If it spills over in some way to the fast-track program, it is my view at this point that *Kimbrough* is limited . . . to crack cocaine sentencing decisions.

Thus, the judge first cited *Martinez-Trujillo*, then specifically rejected the legal argument that *Kimbrough* could apply to this fast-track disparity situation and so rejected Mr. Diaz-Devia's argument that *Kimbrough* had abrogated *Martinez-Trujillo*.

I am therefore quite unpersuaded by the majority's conclusion that the judge did not feel bound by *Martinez-Trujillo*, a conclusion apparently based largely on the judge's comment that he assumed that he had the authority to *consider* the legal argument. While he did consider the argument, it is clear that the judge rejected it because he considered the legal question settled by *Martinez-Trujillo*.

The judge made a second reference to *Kimbrough* in his comments, characterizing Mr. Diaz-Devia's argument as an effort to utilize *Kimbrough* as a "springboard" for judges to apply their individual "proclivities in a way that may not or would not comport with congressional policy and the policy of the United States Sentencing Commission, or in the case of the fast-track issue, the executive determination through the Attorney General and a United States Attorney to implement congressional policy." The trial judge here went on to say that while

he certainly had "the authority to consider these arguments, and while this law may yet be further clarified in the courts of appeal and potentially the Supreme Court, I am not persuaded that these arguments either individually or collectively should yield a [below Guidelines] sentence." Here again, the judge's reference to the state of the law, along with his earlier comments on his views of the applicable law, belies the majority's notion that the judge assumed *arguendo* that the law would allow him to grant the motion.

Thus, although some of the judge's unscripted remarks suggest that his decision was made on the individual merits of the case or, as the majority suggests, based on the judge's agreement with the policy of limiting variances to fast-track districts, there is much in the remarks that reflect the view that the law was settled against Mr. Diaz-Devia. In my view we should not assume that the judge would have made the same sentencing decision if he held a different view of the law. And because as I shall next explain I would hold that the view of the law expressed by the judge is no longer valid, I would remand this case for the judge to consider Mr. Diaz-Devia's argument in accord with what I see as the abrogation of *Martinez-Trujillo* by *Kimbrough*.

**III**

To date four circuits have accepted the argument made by Mr. Diaz-Devia in this case, that federal district judges *may* – in their discretion and in applying

all of the sentencing factors of 18 U.S.C. § 3553(a) – consider the sentencing disparities produced by the fast-track programs. *United States v. Arrelucea-Zamudio*, 581 F.3d 142 (3d Cir. 2009); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008); *United States v. Camacho-Arellano*, 614 F.3d 244 (6th Cir. 2010), and *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2010). All of these cases were decided after *Kimbrough*, and each of these courts concluded that "the holding in *Kimbrough* and in *Spears v. United States*, 555 U.S. 261 (2009) – that sentencing judges may vary from the guidelines based on policy disagreements – 'is not limited to the crack/powder cocaine context.'" *Reyes-Hernandez*, 624 F.3d at 414 (quoting *Camacho-Arellano*, 614 F.3d at 250).

Three other circuits have held to the contrary.[2] But the Third Circuit explained that these courts erred in focusing on Congressional policy. *Arrelucea-Zamudio*, 581 F.3d at 150-51. As the *Rodriguez* court said, "*Kimbrough* made pellucid that when Congress exercises its power to bar district courts from using a particular sentencing rationale, it does so by the use of unequivocal terminology." 527 F.3d at 229-30. And it is of course very significant that the government now agrees with these views, as stated in this case in their Fed. R. App. P. 28(j) letter of November 12, 2010: "The government does not argue that the fast-track

---

[2]*See United States v. Gomez-Herrera*, 523 F.3d 554, 562-63 (5th Cir. 2008); *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740-41 (9th Cir. 2009); and *United States v. Vega-Castillo*, 540 F.3d 1235 (11th Cir. 2008).

provision contained in the PROTECT Act prohibits variances based on fast-track disparity, as several courts of appeals have held."

It is not necessary to elaborate further here. I simply repeat that I find the reasoning of the majority of the circuits persuasive and I also find the government's change of position very significant. I would hold that *Martinez-Trujillo* is no longer good law as a result of the teachings of *Kimbrough*.

**IV**

I therefore respectfully dissent. I would remand for re-sentencing, instructing the district court in clear terms that *Martinez-Trujillo* has been abrogated by *Kimbrough* and that Mr. Diaz-Devia's motion for a downward variance must be considered and decided with that understanding of the current state of the law.