NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0435n.06

Case No. 25-3377

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 25, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| TIFFANY BOGGS, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

THAPAR, Circuit Judge. Tiffany Boggs repeatedly violated the conditions of her supervised release—even fleeing from a warrant for her arrest. So the district court revoked her release and sent her back to prison. Boggs argues that her sentence was procedurally unreasonable because the court determined that her father's recent death didn't cause her violations. But the district court properly considered the nature of her violations and her mitigating circumstances, so we affirm.

I.

In February 2022, Tiffany Boggs was convicted of conspiracy and possession with intent to distribute methamphetamine. The district court sentenced her to thirty-two months in prison, followed by three years of supervised release. The supervised release included conditions requiring her to, among other things, stop using illegal drugs, submit to drug testing, receive mental

health treatment, and refrain from further crime. After finishing her prison sentence, Boggs started her supervised release.

But Boggs didn't comply with the supervised release conditions. About seven months into her supervised release, Boggs stole hundreds of dollars' worth of items from a Walmart. Four days later, she brought synthetic urine to try to cheat a mandatory drug test at her probation office and disclosed she had relapsed into drug use months earlier. Later, when a lab tested a real sample of her urine, the results confirmed she had been using amphetamine and methamphetamine. All of that violated her supervised release. Yet rather than send her back to prison, the district court imposed new conditions of release: Boggs had to participate in cognitive-behavioral treatment and a substance abuse treatment program.

Boggs still didn't comply. After entering the substance abuse treatment program, she broke the program's rules by sneaking out of her residential housing. As a result, she was terminated from the program. Two days later, she showed up at her probation office under the influence of methamphetamine. After Boggs told her probation officer that she had stopped taking her medications and recently attempted suicide, the court issued an emergency warrant for her arrest. So Boggs fled from the courthouse to avoid being taken into custody. Her whereabouts were unknown until she ultimately surrendered to the U.S. Marshals about a week later. Needless to say, this spree also violated the terms of her release.

This time, the district court revoked Boggs's release. The court sentenced her to the low end of the guidelines (six months of imprisonment) followed by three years of supervised release. At the violation hearing, Boggs tried to mitigate her responsibility by contending that her father's recent death had harmed her mental health and caused her violations. But the court rejected that argument. It pointed to Boggs's repeated violations of her supervised release and their severity to

justify a custodial sentence. Boggs timely appealed. She argues that the district court's determination that her father's death didn't cause her violations made her sentence procedurally unreasonable.

## II.

We review a preserved challenge to a sentence's procedural reasonableness for abuse of discretion. *United States v. Potts*, 947 F.3d 357, 364 (6th Cir. 2020).[1] A district court abuses its discretion when it relies on "clearly erroneous facts" that "actually serve[] as the basis for the sentence." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (citation omitted). That means those facts must be "materially false or unreliable," such that the sentence would have been different if the district court hadn't relied on them. *Id.* at 517–18 (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)).

Boggs argues that the district court erred by refusing to accept that her father's death caused her to commit her violations. Boggs points out that she had successfully completed ninety days of treatment before her father's death; that she was afraid of being arrested and thus unable to attend her father's funeral; and that she surrendered to authorities after the funeral. In her telling, this evidence proves that it was her father's death that "put her into a tailspin" and led to her violations. Supervised Release Violation Proceedings Tr., R. 681, Pg. ID 4345. So she contends that the district court's conclusion about the cause of her violations amounts to relying on "clearly erroneous facts."

---

[1] Both parties frame this case as a procedural reasonableness challenge. But we have acknowledged that the line between substantive and procedural reasonableness can be blurry. *See United States v. Camacho-Arellano*, 614 F.3d 244, 247 (6th Cir. 2010). Here, we could conceive of this case as a substantive reasonableness challenge—considering whether the district court placed enough weight on Boggs's father's death as a mitigating factor. Yet even from this perspective, the district court didn't abuse its discretion in deciding that Boggs's father's death did little to mitigate her violations given their ongoing nature and severity. And the parties do not raise this argument.

But the district court reasonably found that her father's death didn't cause her violations. The court highlighted Boggs's "prior history of mental health issues, substance abuse issues, and a loss of a parent," but it observed that those factors were the "underlying reasons" why supervised release was imposed in the first place. *Id.* at 4354–55. While Boggs did comply with the conditions for a few months, her violations started three months before her father's death. Those violations were serious, including theft, drug use, and efforts to cheat her urine test. And as the district court concluded, her repeated offenses—such as sneaking out of her treatment facility and failing to participate in its program—were "distinct from the single event" of her father's death. *Id.* at 4356. Given Boggs's ongoing pattern of noncompliance, the district court did not abuse its discretion by concluding that Boggs's violations could not be directly attributed to the tragic event of her father's death.

\*     \*     \*

We affirm.